THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RICHARD B. GRAHAM, Appellant.

Third Department, December 9, 1982

APPEARANCES OF COUNSEL

*Stephen L. Oppenheim* for appellant.

*Stephen Lungen, District Attorney,* for respondent.

OPINION OF THE COURT

LEVINE, J.

This case, which has been before this court on two prior occasions (69 AD2d 544; 76 AD2d 228), again comes to us on remand from the United States Supreme Court for further consideration in light of that court's recent decision in *United States v Johnson* (457 US __, 50 USLW 4742 [June 21, 1982]), wherein it was held that the rule announced in *Payton v New York* (445 US 573) be applied retroactively to all convictions that were not yet final at the time the decision was rendered.[1] The Supreme Court concluded in *Payton* that, absent exigent circumstances, the Fourth Amendment to the United States Constitution prohibited police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.

The People attempt to evade the application of *Payton* to this case by arguing that the arrest of defendant and Richard Lucas in a Florida motel was not a "routine felony arrest" and, in any event, was made under "exigent circumstances". Neither argument is persuasive. The police officers who arrested defendant and Lucas at 8:00 A.M. on October 19, 1975 did so on the mistaken belief that a warrant for their arrest had been issued at 7:00 P.M. on October 18, 1975. The police had the motel rooms under surveillance the entire evening and waited two hours following the 6:00 A.M. arrival of defendant and his party

---

1. On a previous remand to this court from the United States Supreme Court to consider defendant's conviction in light of *Payton v New York* (445 US 573), we adhered to our original decision modifying defendant's conviction after concluding that *Payton* was not entitled to retrospective application (*People v Graham,* 76 AD2d 228).

at their rooms the following morning before making the arrests.[2] Thus, the police officers had ample time to obtain a warrant which, except for an administrative error, would have been issued. These circumstances, in addition to falling short of the exigent nature needed to fall outside of the scope of *Payton,* also undercut the People's argument that this was something other than a routine felony arrest.

■ Having concluded that defendant's arrest violated his Fourth Amendment rights upon retroactive application of *Payton v New York (supra),* we now turn to a discussion of the consequences of this holding on the admissibility of the evidence used to convict defendant. Among such evidence was defendant's detailed confession, which he now contends must be suppressed as the fruit of the poisonous tree of his illegal arrest. We disagree. The standard for determining the admissibility of a confession obtained in the context of an illegal search and seizure has developed out of the decisions by the United States Supreme Court in *Wong Sun v United States* (371 US 471), *Brown v Illinois* (422 US 590) and, most recently, *Rawlings v Kentucky* (448 US 98). *Wong Sun* established that even though it can be said that the confession arose out of an illegal arrest (i.e., "but for" causality), it need not be suppressed if the police misconduct is sufficiently separable, or there were other intervening factors sufficient to conclude that the confession was not the product of the illegality but of the accused's own untainted free will. The court said: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint'" (*Wong Sun v United States,* 371 US 471, 487-488, *supra*). Thus, the court suppressed a codefendant's statement which followed immediately after his illegal arrest on the grounds that it was not "sufficiently an act of free will to purge the primary taint of the

2. The facts of this case are more fully reported in earlier decisions (*People v Graham,* 90 Misc 2d 1019; 69 AD2d 544).

unlawful invasion" (*supra,* at p 486). However, the court upheld Wong Sun's confession, coming after his arraignment in court and release from custody, because the connection between his unlawful arrest and the statement "had 'become so attenuated as to dissipate the taint.'" (*supra,* at p 491.)

In *Brown* (*supra*), the court more clearly articulated that the admissibility of a confession arising out of an illegal arrest involves a dual inquiry: first, causality, i.e., whether the accused's statement was the product of his own free will untainted by the official misconduct; second, the purpose and flagrancy of the acts of the police, taking into account the underlying objectives of the exclusionary rule to deter lawless police activity and to preserve judicial integrity (see *Brown v Illinois,* 422 US 590, 602-604, *supra*). Indeed, the culpability of the police was identified as of *particular* significance (*supra,* at p 604). In *Brown,* the confession failed under both of the dual aspects of the test. It followed in close temporal proximity to the illegal arrest without any significant intervening circumstances, thus establishing causal relationship. And the police conduct was purposeful and flagrant: "The detectives embarked upon this expedition for evidence in the hope that something might turn up. The manner in which Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright, and confusion" (*supra,* at p 605).

In *Rawlings* (*supra*), the Supreme Court further refined the test of admissibility in two interrelated respects: first, the close temporal proximity of the illegal action of the police to the giving of the incriminating statement is impliedly but unmistakably rejected as per se determinative of a causal relationship. In *Rawlings,* the inculpatory admission occurred within minutes after illegal detention of the accused, and followed immediately upon the police's unlawful seizure of his companion's pocketbook. The court nevertheless found this insufficient alone to establish causality. Second, in weighing causality, *Rawlings* required a close analysis of all of the circumstances surrounding the giving of the confession, and particularly the relationship in fact between the statement and the actual

conduct of the police found to be illegal: "Although under the strictest of custodial conditions such a short lapse of time might not suffice to purge the initial taint, we believe it necessary to examine the precise conditions under which the occupants of this house were detained" (*Rawlings v Kentucky,* 448 US 98, 107, *supra*). Thus, in determining that there was no causal relationship, the court in *Rawlings* found critically significant that during the illegal detention of defendant and his companions they were free to engage in normal activities inside the house and the police used no force upon their persons (*supra,* at p 108).

Applying the foregoing analysis to the facts of the instant case, we have no hesitancy in upholding defendant's confession. To be kept foremost in mind is that under *Payton v New York* (445 US 573, *supra*) what rendered the arrest in the instant case illegal was not the seizure of defendant's person, but the illegal entry into his motel room to effect that seizure. *Payton* casts no doubt on the continued validity of a warrantless public arrest upheld in *United States v Watson* (423 US 411). Therefore, in applying the refinements of causality analysis required by *Rawlings* (*supra*), the focus here has to be on the existence or nonexistence of a causal connection between defendant's confession and the *illegal entry.* Purely and simply, there is nothing whatsoever in the record to connect defendant's self incrimination with the earlier entry of the police into the motel. This is not a situation where defendant incriminated himself immediately after police burst into his room. To the contrary, defendant only confessed several hours later at the Broward County Sheriff's office, after he had been advised of his *Miranda* rights no less than four times, and three times in writing or recorded orally had acknowledged having been advised of them and expressly waived them. In short, the conclusion is inescapable that the actual circumstances and police conduct giving rise to defendant's confession were the same here as they would have been had defendant lawfully been arrested outside his motel room rather than inside. The confession is thus demonstrably untainted by the entry retroactively condemned by *Payton* and *United States v Johnson* (457 US __, 50 USLW 4742, *supra*). The case for admissibility is even

stronger when we turn to the second facet of the *Wong Sun-Brown-Rawlings* test, that of the purpose and flagrancy of the police misconduct. This is not a case where the police entered defendant's motel room on an "expedition for evidence in the hope that something might turn up" as in *Brown* (*supra,* p 605), or even one where they acted under an erroneous impression of the legality of their conduct as in *Rawlings.* Here, the police acted in a manner that was valid under the then prevailing statutory law of the country and which had been judicially upheld in New York and Florida (see *Payton v New York,* 445 US 573, 598-600, *supra*). Moreover, they acted under the honest, reasonably held belief that a warrant for defendant's arrest had been issued, which if accurate, would have rendered their conduct constitutionally valid under the higher requirements for nonpublic arrests created some five years later in *Payton* and applied retroactively seven years later in *Johnson.* Surely then, the acts of the police in the instant case were not so purposefully and flagrantly illegal as to require application of the exclusionary rule in order to deter official misconduct or to preserve judicial integrity. Consequently, defendant's confession was properly admitted at his trial. In so ruling, we are not unmindful of our dictum in defendant's earlier appeal that "if the arrest was defective the subsequent confession could not be admitted because the connection between the arrest and the inculpatory statement had not yet become so attenuated as to dissipate the taint" (*People v Graham,* 69 AD2d 544, 547, *supra*). Our earlier decision was rendered before *Rawlings,* when *Wong Sun* and *Brown* could reasonably have been read as attaching special significance to the temporal proximity between the arrest and the confession. As our previous discussion of *Rawlings* demonstrates, however, such temporal proximity can no longer be considered determinative. Just as the prosecution is burdened here with the result of the development in the constitutional law of arrest effected by *Payton* and *Johnson,* so, too, are the People entitled to the similarly subsequent refinements in the application of the exclusionary rule to this fact pattern enunciated in *Rawlings.* Accordingly, the original ruling denying the motion to suppress defendant's confession need not be disturbed.

■ We next turn to the various items of tangible evidence that were the subject of the suppression hearing, but only insofar as previous rulings upholding their admissibility must be reconsidered in the light of *Payton*. As to the keys to the safe-deposit box in Newark, New Jersey, containing the cash proceeds of the crime, the record of the suppression hearing establishes that the defendant gave the keys to his female companion, Roberta Holmes, and that they were in her purse and the purse was in her possession when the police entered the motel room. The evidence supports the suppression court's finding that she had no objection to the police taking the keys (*People v Graham,* 90 Misc 2d 1019, 1027). Defendant never told her what the keys were for or that she was to withhold them from anyone else. On the basis of these facts, defendant has failed to sustain his burden of proof that the search of Holmes' purse was illegal and that he had a legitimate expectation of privacy in it; consequently, he lacked standing (*Rawlings v Kentucky,* 448 US 98, 104-105, *supra; United States v Salvucci,* 448 US 83; *Rakas v Illinois,* 439 US 128). It is also noteworthy that, based upon the same record at the joint suppression hearing, the Court of Appeals in *People v Lucas* (53 NY2d 678, 681, n) held that since the purse was searched while in Holmes' possession, codefendant Lucas had no standing to challenge the legality of the search. By the same reasoning, defendant could not legitimately have expected the contents of the safe-deposit box to have remained private. In any event, however, the search of the safe-deposit box and seizure of its contents were not unlawful, having been accomplished pursuant to a valid search warrant obtained by the police on the basis of information contained in defendant's confession and their follow-up investigation (see *People v Graham,* 90 Misc 2d 1019, 1026-1027, *supra*).

■ We next consider the legality of the search of the trunk lid of codefendant Lucas' car from which the victim's fingerprints were taken on October 20, 1975. The vehicle had been seized, pursuant to a valid search warrant, three days earlier from a public motel parking garage near the Newark airport. An initial search was made which did not reveal the fingerprints. Clearly, at the time of the seizure

defendant had no property or possessory rights to Lucas' vehicle or its trunk, nor did he have any such rights at the time of the October 20 search when, additionally, the police had lawfully acquired possession under the search warrant. Thus, defendant also lacked standing to contest the legality of that search (*Rakas v Illinois,* 439 US 128, 148-149, *supra; People v McChesney,* 81 AD2d 927). Apart from standing, even if we were to hold that the police had exhausted their authority to search under the warrant by the initial search of the vehicle, new probable cause for the second search was established from defendant's confession, and the second search may therefore be upheld under *United States v Ross* (456 US 798).

■ The only remaining items requiring consideration are those seized at the motel following defendant's arrest. As described in *People v Lucas* (53 NY2d 678, 681, *supra*), they consisted of briefcases of defendant and Lucas, receipts for travelers' checks, and several Western Union receipts for money orders. Unquestionably, all of these items should have been suppressed, both under *Payton* and because the search leading to their discovery was "overbroad" (*People v Lucas, supra,* p 681). On defendant's initial appeal to this court, we recognized the possible illegality of the search, but nevertheless held that any error must be considered harmless (*People v Graham,* 69 AD2d 544, 548, *supra*). Upon the present reconsideration of the record, we adhere to that determination. The tainted evidence was of minimal probative value. The admissible evidence constituted overwhelming proof of defendant's guilt, consisting of defendant's flight and the other factors upon which probable cause for the arrest was based (see *People v Graham,* 90 Misc 2d 1019, 1021-1024, *supra*), defendant's 14-page confession in which he totally inculpated himself, the victim's fingerprints on Lucas' vehicle and defendant's fingerprints on his safe-deposit box containing more than $10,000 of the proceeds of the crime. Under these circumstances, there is no reasonable possibility that the erroneous admission of the items seized at the motel contributed to defendant's conviction, and therefore the failure to suppress such evidence was harmless beyond

a reasonable doubt (*People v Sanders,* 56 NY2d 51, 66-67; *People v Etoll,* 51 NY2d 840, 841; *People v Almestica,* 42 NY2d 222, 225-227).

■ On the basis of the foregoing, we conclude that the retroactive application of *Payton v New York* (*supra*) does not require a different result from that reached on defendant's initial appeal. The judgment of conviction, as modified on that appeal (*People v Graham,* 69 AD2d 544, 549, *supra*) should therefore be affirmed.

The judgment should be modified, on the law and the facts, by reversing the convictions of kidnapping in the first degree and robbery in the first degree and dismissing the counts of the indictment therefor, and, as so modified, affirmed.

KANE, J. (concurring). While I am in complete accord with the legal conclusions set forth in the well-reasoned opinion of Justice LEVINE, I suggest there may be additional reasons which support an affirmance.

To be remembered is the fact that this case has been remanded to us "for further consideration in light of *United States* v. *Johnson,* 457 U.S. __ (1982)" by the United States Supreme Court. *Johnson* (*supra,* p __) presented the question "whether the rule announced in *Payton* applies to an arrest that took place before *Payton* was decided." The court resolved the question by applying the *Payton* rule to all cases pending on direct appeal at the time *Payton* was decided. Thus, while we are now instructed that a warrantless and nonconsensual entry at a home cannot be made to effect a routine felony arrest, absent exigent circumstances, the underlying question, never directly addressed by this court when the matter was before us on two other occasions, is, in my view, whether the rule in *Payton* applies to the rather unusual factual circumstances of this case. A detailed description of those facts is reported in *People v Graham* (90 Misc 2d 1019). Reference thereto (*supra,* at p 1024) establishes, and it is not controverted, that at the time of the entry and arrest of Graham, the police officers had applied for a fugitive arrest warrant, and were informed one had been issued. Moreover, they were in possession of a teletype message to that effect, a

written instrument which police authorities historically have acted upon while in foreign jurisdictions, and which is acknowledged to be routine police procedure.

Thus, although I am not suggesting that a "good faith exception" should be made to the application of the exclusionary rule to alleged improper police conduct, for, indeed, I fail to discern any improper conduct by the police officers in this case, the question of the good faith of the police officers becomes extremely significant when considering this matter "in light of *United States* v. *Johnson, 457* U.S. ___ (1982)." *Johnson* reviewed, extensively, the Government's argument that arresting officers should be charged only with knowledge of and good faith compliance with prevailing constitutional requirements. In rejecting such argument, the court pointed out that it had long emphasized the fact that "police officers should resolve any doubts regarding the validity of a home arrest in favor of obtaining a warrant" (*United States v Johnson, supra,* p ___). This is the lesson of *Payton* with which we are concerned. It is the court's resolution of that narrow issue which was presented to it (*Payton v New York,* 445 US 573, 582). The mere fact that a teletype message rather than a warrant was in the officers' hands at the time of arrest should not abort their actions which were, in fact, in accordance with constitutional norms in existence at the time, although not officially articulated until six years later.[*] If *Payton* did not announce any new principle of law (*United States v Johnson, supra*), what police conduct in this case is so improper that repetition thereof should be prohibited by imposition of the exclusionary rule? It is my view that no constitutional principle was offended in this case by the conduct of the arresting officers, and that any administrative delay in issuance of a warrant of arrest some 1,300 miles from the scene should not transform the constitutionally clairvoyant conduct of the arresting officers into a violation of a defendant's rights.

MAHONEY, P. J. (dissenting). While we agree with the majority's conclusion that defendant's arrest was violative

---

[*] It should be noted that under recent amendments to the Criminal Procedure Law, a search warrant can be obtained upon application to a Judge by telephone (see L 1982, ch 679, eff Sept. 20, 1982).

of his Fourth Amendment rights upon retroactive application of *Payton v New York* (445 US 573), we disagree with that portion of the statement which holds that the illegal arrest does not compel suppression of defendant's confession. We would adhere to the language in our original decision on defendant's appeal which, albeit in dictum, stated: "Of course, if the arrest was defective the subsequent confession could not be admitted because the connection between the arrest and the inculpatory statement had not yet become so attenuated as to dissipate the taint". (*People v Graham,* 69 AD2d 544, 547.) Since the confession is inadmissible in our view, we also disagree with the majority's conclusion that the failure to suppress certain items of physical evidence which were seized from the Florida motel rooms was harmless beyond a reasonable doubt. Without the confession, it cannot be said that there is no reasonable possibility that the erroneous admission of the items seized at the motel contributed to defendant's conviction (see *People v Sanders,* 56 NY2d 51, 67; *People v Crimmins,* 36 NY2d 230, 237).

Accordingly, we would reverse defendant's conviction on all four counts, reinstate the entire indictment, and remit the case for a new trial.

WEISS, J., concurs with LEVINE, J.; KANE, J., concurs in a separate opinion; MAHONEY, P. J., and SWEENEY, J., dissent and vote to reverse in an opinion by MAHONEY, P. J.

Judgment modified, on the law and the facts, by reversing the convictions of kidnapping in the first degree and robbery in the first degree and dismissing the counts of the indictment therefor, and, as so modified, affirmed.