■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY BENTHALL Appellant. — Appeal from judgments of the Supreme Court, New York County (Kleinman, J., on suppression hearing, plea and sentence), rendered January 12 and 14, 1982, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the second degree and criminal possession of a weapon in the fourth degree is held in abeyance and the matter remanded for further proceedings as herein indicated. The facts of this case and the issues presented on this appeal are fully and fairly stated in the dissent. The key issue on this appeal (as observed by our dissenting colleagues) is whether the statements the defendant's female companion, Miss Penfield, made to the police, namely, that a gun and heroin could be found in defendant's apartment, were freely and voluntarily made. If they were, then, notwithstanding the initial warrantless entry into the apartment and the illegality of

the arrest, the information obtained from her may be sufficiently attenuated to serve as probable cause, sufficient to sustain the search warrant later obtained which produced the contraband, for possession of which defendant was convicted. However, if her statements were not freely and voluntarily given, but were the result of coercion, then there is no attenuation, the information remains tainted, and the warrant must fall and the gun and heroin suppressed. Except for the People's concession that Miss Penfield was "not free to leave", the evidence respecting the voluntariness of her statements is in sharp conflict and no findings in respect thereto or in respect to attenuation were made by the hearing court. Absent such findings, which obviously turn to a significant degree upon credibility, we cannot conclude that the statements were freely made and attenuated from the illegal arrest and that suppression was properly denied. Therefore, we hold this appeal in abeyance, and remand this case to the Supreme Court, New York County, for further proceedings and determination as to the voluntariness of the statements made and information supplied to the police by Miss Penfield and whether or not there was a sufficient attenuation from the illegal arrest to sustain the validity of the warrant subsequently issued and justify denial of the motion to suppress the evidence seized thereunder. Concur — Kupferman, Kassal and Alexander, JJ.

Murphy, P. J., and Fein, J., dissent in a memorandum by Fein, J., as follows: I would reverse and grant the motion to suppress. Defendant was convicted on plea of criminally possessing a weapon and a controlled substance. Both were seized from his apartment as a result of an illegal, warrantless entry. Police investigating a fatal shooting went in force (10 officers) to defendant's apartment, 16 days after the crime, without a search warrant. Entry was obtained by subterfuge. The detective heading the search party knocked on the door and announced that he was the building "super". Defendant was arrested as he opened the door. A female companion who shared the apartment with defendant was detained, and later questioned at the precinct. However, she was not charged with any crime. Defendant, after receiving *Miranda* warnings at his apartment, showed the detective where he had concealed a gun in the apartment. The detective also observed a quantity of hashish allegedly in plain view. Some time later, at the precinct to which the police had taken her, defendant's female companion informed the detective that a gun and heroin could be found in the apartment. After discussions with an Assistant District Attorney, the detective obtained a search warrant for the apartment. The apartment had been secured by the police in the interim. This version of the facts, stated most favorably to the People,[*] did not justify the subsequent issuance of a search warrant. The search two hours later yielded a revolver, drugs and drug paraphernalia. The warrantless arrest was illegal (*Payton v New York*, 445 US 573). However, since *Payton* was decided on the same day as the arrest occurred, the suppression Judge held it was not applicable (112 Misc 2d 731). The People now concede that defendant's arrest was illegal, upon retroactive application of *Payton* (*United States v Johnson*, 457 US· 537).

---

[*] Defendant's statement of the facts differed markedly in certain crucial aspects. In the first place, defendant's parents testified that during the interim between defendant's arrest and the subsequent execution of the search warrant they visited the police-secured apartment and found it in disarray, with furniture pulled away from the walls, the mattress off the bed, and the closets and kitchen cabinets emptied of their contents, leaving the inference that the police had in fact conducted a search of the premises prior to obtaining the warrant. Second, defendant's female companion testified that the police searched the apartment immediately upon entry, and that she was later coerced into acting as a source of information about the gun and drugs found in the apartment, while she was handcuffed, under threat of being charged with their possession. One police officer testified that he observed her in handcuffs.

However, they urge that there was independent justification for the subsequent search of defendant's apartment based upon police observations of items in plain view in the apartment, and the subsequent statements to the police by defendant's female companion. The first argument is simply a species of bootstrap logic. The taint of an illegal entry by force and subterfuge cannot be removed by reliance upon police observations once inside the illegally entered premises. As the suppression Judge held, under *Payton* the motion to suppress is to be granted since not only the initial search but also the subsequently obtained search warrant were the fruit of the unlawful arrest. As to the second argument, the People concede that defendant's female companion was detained in a custodial setting, both at the apartment and later at the precinct, in furtherance of the homicide investigation. It is thus patent that she was under some pressure to co-operate with the police in rendering a statement to the District Attorney as the basis for their obtaining a search warrant. At the outset, the only basis the police may have had to arrest defendant would have been reasonable cause to believe that defendant had committed the homicide then under investigation (CPL 140.10, subd 1, par [b]). If the police truly had reasonable cause to believe that defendant had committed a homicide, the logical question is why they did not, in the 16 days of their investigation since commission of the crime, obtain a warrant for his arrest. The police evidently had enough time to find out where defendant lived, to determine that he was at home, and to mobilize a 10-man arrest party, but ostensibly did not have enough time to obtain a warrant for defendant's arrest. The Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home for the purpose of making a routine felony arrest (*Payton v New York, supra*). Where the police have more than ample time to obtain a search warrant, which was evidently the case here, a search without a warrant is invalid (*People v Knapp*, 52 NY2d 689). The desire to preserve the element of surprise would not, in and of itself, constitute such circumstances of exigency as to avoid the constitutional prohibition against a warrantless entry (*People v Adler*, 50 NY2d 730, 736, cert den 449 US 1014). As the suppression Judge found, there were no exigent circumstances justifying the police procedure. (112 Misc 2d, *supra*, at p 732; see *People v Lee*, 83 AD2d 311, 312.) Indeed, even with a warrant, the police must normally give proper notice of authority before breaking in, unless there is reasonable cause to believe that giving such notice will result in the defendant's escape, danger to the police, or destruction of evidence (CPL 120.80, subd 4; see *United States v Martinez-Gonzalez*, 686 F2d 93, which adds such factors as the gravity or violent nature of the offense with which the defendant is to be charged, and a reasonable belief that he is armed in the premises). The only conclusion that can be drawn is that the warrantless entry by subterfuge was not justified here. (See *Wong Sun v United States*, 371 US 471, 482; *People v Floyd*, 26 NY2d 558, 562, n.) Conceding that defendant's arrest was illegal under these circumstances, the People maintain that there was sufficient attenuation between his arrest and the subsequent seizure of evidence to overcome any constitutional taint (*Wong Sun v United States, supra*). Inasmuch as the entry of the apartment was illegal in and of itself (*People v Graham*, 90 AD2d 198, 202), certain intervening factors must occur before the taint can be dissipated. Plainly any evidence immediately seized as a result of the entry must be suppressed. This would extend to items of contraband observed by the police upon entering the apartment, and items seized as a result of defendant's disclosure of them upon being questioned immediately after the entry. However, the People rely upon the statements made by Michelle Penfield, defendant's female companion, in the apartment. Where the seizure is attributed to statements by a witness who has "voluntarily cooperated" with the police as a result of the entry, the degree of the

witness' free will must be carefully probed. In *United States v Ceccolini* (435 US 268, 277), the Supreme Court ruled that time, place and manner of the initial questioning of such a witness should be shown to be "the product of detached reflection and a desire to be cooperative". In that case there was "overwhelming" evidence that the witness' testimony implicating the defendant had been an act of her own free will, in no way coerced or even induced by the authorities. The witness there, a shop employee, had been questioned by the police about an envelope belonging to the defendant, her boss, which contained policy slips. The policeman spotted the envelope while he was in the shop on personal business. The employee's subsequent statement implicating the defendant was ruled admissible. There is no required period of time that must elapse before attenuation takes hold (*Rawlings v Kentucky*, 448 US 98). As that case holds, what is more important is that during the lapse of time between the illegal act and the acquisition of incriminating evidence there must be some significant pause during which an illegally detained defendant or potential witness is free to move about and engage in normal activities. The police conduct with respect to defendant's female companion in this case compels the conclusion that her freedom was severely restricted between the time she was found in defendant's apartment and the time she made the incriminating statement to the Assistant District Attorney. The People concede that she was not free to leave during this two-hour period at the apartment and at the precinct. She was threatened with prosecution, and compelled to accompany the police to the precinct where she was detained and questioned. During a portion of that time she was in handcuffs. Under these circumstances, it is unreasonable to infer that Penfield's answers were "sufficiently an act of free will to purge the primary taint of the unlawful invasion" (*Wong Sun v United States*, 371 US, *supra*, at p 486). Although the suppression Judge made no findings with respect to this issue, it is implicit that he would have found her information tainted and insufficient to sustain the warrant, since he concluded that if *Payton* applied, the evidence was suppressible. There is no need or basis for the attenuation hearing directed by the majority in the face of the record facts that (1) Penfield was in custody and handcuffed and not free to leave while she was being questioned in the apartment after the illegal entry by the police; (2) she was threatened with prosecution for possession of the gun and drugs found in the apartment, at that time, if she did not cooperate with the police; (3) she was in handcuffs for at least a part of the time when she was taken to the police precinct to be questioned further and she was kept there for two hours. In the face of these undisputed facts, a finding that her statements were "voluntary", thus attenuating the taint of the illegal arrest, would be incredible. A case for attenuation simply has not been made out here. The evidence has been procured by exploitation of the illegal entry, arrest and subsequent limitation on Penfield's activity.