OPINION OF THE COURT
Eve Preminger, J.
Is a lineup immediately following a warrantless arrest poisoned when the arrest violates the principles enunciated by the United States Supreme Court in Payton v New York (445 US 573)? This question, which has yet to be addressed in this jurisdiction, compels an analysis of the effect of Payton violations upon subsequent police conduct.
FACTS
On November 25, 1982, Laurie Buehler was robbed by two persons unknown to her. The next day, after Detective Longobardi showed her a photo array, she identified defendant as one of the persons who robbed her.
The detective and a police officer in civilian clothes then went to defendant’s apartment, knocked on the door and announced “police officers”. After waiting a few moments and receiving no response, they repeated the announcement and knocked again, whereupon defendant’s mother opened the door. The police entered and told defendant to accompany them to the police station to speak to them about a robbery that had taken place on Thanksgiving. She was taken to the station house, placed in a lineup and identified by the complainant as the perpetrator of the robbery.
*632 While the People claim that defendant voluntarily left her home with the officers to go to the police station, it is evident from the officers’ testimony that her actions were no more than acquiescence to their authority (Schneckloth v Bustamonte, 412 US 218). As the officers candidly conceded, she was not free to refuse them. I find, therefore, that Ms. Figueroa was in custody and under arrest when she “accompanied” the officers to the precinct.
Defendant does not argue that the police lacked probable cause to arrest her; indeed, it is clear that once defendant was picked out of the photo array, probable cause did exist. Defendant nevertheless contends that the lineup evidence should be suppressed because the warrantless arrest which preceded it was illegal pursuant to Payton v New York (supra). Payton established that in the absence of exigent circumstances, an arrest warrant is required before the police can enter a home to take a suspect into custody. Even where, as here, there is probable cause to believe that an individual has committed a crime, the Supreme Court has declared that the “overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic” (Payton v New York, supra, at p 601) forbids “needless intrusions” (p 586) into the home by the police to make arrests.
The arrest being defective, was the subsequent lineup tainted? Somewhat surprisingly, there is no case law on this question in New York,[1] and cases from other jurisdictions are few (see People v Rembert, 89 Ill App 3d 371). The answer must depend upon the necessity, if any, of connecting the illegality of a warrantless home arrest to subsequent conduct. It could be argued that the effect of a violation of Payton should be confined to the suppression of any evidence seized at the home during the arrest. Once the police have removed a defendant from his residence, the illegal police activity has terminated, and the defen *633 dant is in an identical position to anyone in custody where there is probable cause to believe he has committed a crime. Qn the other hand, such reasoning would mean that violations of Payton would be treated differently from any other breach of the Fourth Amendment. The deterrent value sought to be derived from the rule would be, at the very least, diluted.
Although there have been no cases determining the admissibility of a lineup in the instant situation, there have been a number of New York cases dealing with the admissibility of statements obtained from a defendant after a warrantless home arrest. These cases indicate that the legal consequences of warrantless arrests in the home should not be treated differently from other Fourth Amendment violations. Traditional principles of attenuation should be applied to decide whether the challenged police conduct is sufficiently separate from the initial illegal behavior so as to dissipate any possible taint.
Just as physical evidence need not be suppressed where the connection between it and an illegal search or seizure has become “so attenuated as to dissipate the taint” (Nardone v United States, 308 US 338, 341), or where it is obtained from an independent source (Silverthorne Lbr. Co. v United States, 251 US 385), verbal evidence (admissions by defendant and testimony of matters observed during a search) is similarly admissible (Wong Sun v United States, 371 US 471).
Attenuation may be measured by several factors. The closer in time a confession follows an illegal arrest, the less likely it is to be attenuated (Brown v Illinois, 422 US 590). Also to be weighed is the nature and extent of the illegal police conduct. The more flagrant and purposeful the violation of an individual’s rights, the stronger the intervening factors necessary to cleanse the taint (Brown v Illinois, 422 US 590, supra; see 3 LaFave, Search and Seizure, § 11.4 [b], pp 628-638, and 1984 Pocket Part, pp 254-259). Finally, intervening factors which break the chain of events between arrest and confession may obliterate the taint.
Thus, if after arrest an individual has the opportunity to confer with counsel (State v Jones, 558 SW2d 233 [Mo]), is released from custody (Wong Sun v United States, supra), *634 is advised of his rights by a magistrate (Johnson v Louisiana, 406 US 356), or has volunteered information of his own free will (Sanders v State, 259 Ark 329), the taint may have dissipated sufficiently to allow the introduction of the secondary evidence.
Three appellate courts in New York have applied these principles to cases involving postarrest statements which followed warrantless home arrests.
In People v Matos (93 AD2d 772), defendant was the subject of a warrantless arrest. He then made a voluntary statement implicating himself in a homicide after being told his girlfriend had already revealed his participation in the killings. The court found defendant’s statement, given one and one-half hours after his arrest, to be free of taint under these circumstances. See, also, People v Benthall (94 AD2d 678), where the court directed that an attenuation hearing be held to determine the precise connection between the arrest and the statements.
In People v Graham (90 AD2d 198), the court found no exigent circumstances to justify the warrantless arrest of defendant in his home. In concluding that defendant’s subsequent confession was nonetheless admissible at trial, the court noted that the lack of flagrant police conduct and the fact that defendant had been advised of his Miranda rights four separate times, three in writing, before confessing hours later, attenuated the taint flowing from the arrest.
The court in People v Anthony (93 AD2d 892) suppressed statements by defendant outside of his apartment following his warrantless arrest in his home. The court rejected the prosecution’s argument that the statements were admissible because they were not made inside the apartment and that the arrest, based on probable cause, would have been lawful if not for the Payton problem. The court noted that the “ratio decidendi” (93 AD2d, at p 893) of Payton was the protection of an individual from warrantless intrusions into his home and ruled that to preserve the function of the exclusionary rule as a deterrent to unlawful police conduct, the statements must be suppressed.
Returning to lineups, the same rule is routinely applied in standard identification situations where the initial po *635 lice illegality is an arrest made without probable cause. It is clear that although an in-court identification of defendant will be permitted,[2] testimony about the lineup will be excluded unless the taint stemming from the arrest has been attenuated (United States v Crews, 445 US 463; People v Pleasant, 54 NY2d 972).
Should the rule be any different if, as in the instant case, the Fourth Amendment violation stems not from a lack of probable cause but from a failure to obtain a warrant?.
The answer to this question must be in the negative. The same policy reasons — protection of constitutional guarantees, deterrence of unlawful police conduct and “closing the door” of the courts to use of evidence unconstitutionally obtained (Wong Sun v United States, 371 US, at p 486) are present in both situations.
Indeed, if, as Payton advised, the “‘chief evil against which the wording of the Fourth Amendment is directed’ ” (445 US 573, 585, supra; see, also, United States v United States Dist. Ct., 407 US 297) is the protection of home against physical entry by the State, the case for exclusion in Payton situations is stronger still than that where the police illegally arrest an individual on the street. In both instances the deterrent function of the exclusionary rule can only be served by excluding the lineup testimony, unless intervening events have dispelled the taint flowing from the illegal police conduct.
In the instant case, although the conduct of the police was not flagrant, there was no justification offered for their failure to obtain a warrant. (Cf. People v Graham, 90 AD2d, at p 203.)
In contrast to the defendants in People v Matos (supra), and People v Graham (supra), whose statements were unequivocally voluntary, Ms. Figueroa never freely consented to participate in the lineup. She had not met with counsel beforehand or had an attorney present during the lineup. Indeed, if the police had proceeded appropriately and first obtained an arrest warrant, which requires the filing of a felony complaint, the right to counsel would have attached prior to the holding of the lineup (People v Samu *636 els, 49 NY2d 218). Thus, not only was there no attenuation of the initial illegality, but the defendant was placed in a significantly different position due to the failure to obtain a warrant.
It is therefore clear that the lineup was directly connected to the illegal warrantless arrest and that no attenuating circumstances had dissipated the taint. Accordingly, defendant’s motion to suppress testimony concerning the prior identification is granted.

. Although the First Department in People v Lewis (94 AD2d 44) did not suppress a lineup which followed the warrantless arrest of defendant in his home, the issue before me was not. presented to the Lewis court which specifically noted that its treatment of the case was limited by the arguments made in defendant’s brief. (94 AD2d, at p 51.) See, also, People v Battee (94 AD2d 935), in which the Fourth Department failed to suppress a showup. The instant issue was not reached in that case because the court found the entry by the police into the defendant’s home to be lawful in light of the existence of exigent, circumstances.

. Provided, of course, it is the product of an independent recollection (Manson v Brathwaite, 432 US 98).