OPINION OF THE COURT
Gloria Goldstein, J.
Defendant, charged with four counts of robbery in the first degree, and criminal use of a firearm in the first *635 degree, moves to suppress (1) all pretrial and in-court identification testimony; (2) certain statements made by him; and (3) certain live-witness testimony at trial.
On the basis of evidence adduced at a hearing on this motion, this court makes the following findings of fact and conclusions of law.
THE FACTS
On February 18, 1983, four persons were robbed at knifepoint by an individual unknown to them. On March 30, 1983, Detective Richard Barnett showed a photo array to Tasha Long, an eyewitness to these crimes. Ms. Long identified the defendant as the person who committed the robberies. The next day Detectives Barnett and Hall went to defendant’s apartment and knocked on the door. Joyce Middleton, the defendant’s mother, answered the door and the detectives entered. Ms. Middleton told the detectives that the defendant was asleep in his bedroom. The detectives knocked on defendant’s bedroom door, entered, and identified themselves as police officers.
Defendant was clean-shaven and wore short hair, whereas in the photo identified by Tasha Long he had a beard and long hair. The detectives asked him whether he previously had a beard and longer hair. Defendant in essence stated that he had a beard and longer hair for awhile, but that he has since shaved and cut his hair. The detectives then questioned defendant’s mother about his appearance and she stated that when he returned home on March 26, after being out all night, he shaved off his beard and cut his hair very short.
Thereafter, defendant was given his Miranda rights, taken to the 67th Precinct, placed in a lineup, and identified by Tasha Long as the perpetrator of the robberies.
The People claim that the defendant and his mother consented to the police entry into their apartment, and that defendant voluntarily left his home to go to the precinct. It is evident, however, from the detective’s testimony, that their actions constituted no more than acquiescence to police authority (Schneckloth v Bustamonte, 412 US 218; Bumper v North Carolina, 391 US 543, 548-550). As Detective Barnett candidly conceded, he went to the apartment to arrest the defendant.
*636 This court finds that the defendant was in custody and under arrest when he was questioned by detectives and thereafter accompanied them to the precinct.
It is clear that once defendant was selected from the photo array, probable cause to arrest existed. However, under Payton v New York (445 US 573), warrantless entry into a home in order to make a routine felony arrest, even on probable cause, is not permitted in the absence of exigent circumstances. There being no exigent circumstances present, an arrest warrant was required before the police could lawfully enter defendant’s apartment to arrest him. Even where, as here, there is probable cause to believe that an individual has committed a crime, the Supreme Court has declared that the “overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic” (p 601) forbids “needless intrusions” (p 586) into the home by the police to make arrests.
THE LINEUP
Defendant contends, and this court agrees, that the lineup evidence must be suppressed as the fruit of his unlawful arrest (People v Dodt, 61 NY2d 408; People v Figueroa, 122 Misc 2d 631; People v Barnes, 101 Misc 2d 76).
There were no meaningful intervening circumstances between defendant’s arrest and the lineup, other than the mere passage of time, which, by itself, does not attenuate the taint flowing from an unlawful arrest. Defendant never freely consented to participate in the lineup. He had not met with counsel beforehand, nor had he had an attorney present during the lineup. Thus, the lineup was directly connected to the illegal warrantless arrest with no attenuating circumstances to dissipate the taint.
IN-COURT IDENTIFICATION
Although testimony about the lineup will be excluded, an in-court identification of the defendant will be permitted (United States v Crews, 445 US 463; People v Pleasant, 54 NY2d 972). The lineup has been suppressed as the product of an unlawful arrest and not as a result of *637 suggestive police procedures. No evidence has been adduced that the pretrial identification procedures utilized were in any way suggestive. To the contrary, this court, having examined the photo array utilized in this case and having examined a photographic representation of the lineup, finds that both were comprised in a fair manner. The photo array and lineup contained individuals similar in age and appearance to the defendant. The People have met their burden of going forward to demonstrate that the procedures employed were not impermissibly suggestive. This court finds no suggestiveness or other infirmity to taint any prospective in-court identification. In the absence of an improper lineup or photo array, which may have affected the reliability of the in-court identification, it is unnecessary for this court to make any finding of independent source. Since the witness, Tasha Long, viewed a proper lineup and photo array, she is, in reality, in the same position as a witness who has not been exposed to any pretrial identification procedure at all. Such a witness, not having been exposed to any impermissibly suggestive pretrial identification procedures, may make an in-court identification without a preliminary finding of independent source. In the same manner, Tasha Long may also make an in-court identification without any such finding of independent source.
defendant’s statements
The defendant’s statements made in his apartment must be suppressed on two grounds. First, as with the lineup, the statements are inadmissible as the fruit of his unlawful arrest (People v Driscoll, 87 AD2d 996). There were no intervening factors between the unlawful entry and defendant’s statements to attenuate the taint.
Secondly, defendant’s statements must, in any event, be suppressed, as they were clearly the product of a custodial interrogation conducted before defendant was advised of his Miranda rights as required under the Fifth Amendment (People v Lynes, 49 NY2d 286).
TESTIMONY OF JOYCE MIDDLETON
Following their unlawful entry into defendant’s apartment, the detectives questioned defendant’s mother Joyce Middleton and obtained certain statements inculpating the *638 defendant. Specifically, Ms. Middleton stated that on a date subsequent to the robberies under investigation, defendant returned home late one night and shaved off his beard and cut his hair. The statements are obviously relevant as the complainant’s descriptions and eyewitness Tasha Long’s photo selection all indicate that the perpetrator was a bearded man with long hair.
Defendant now contends that any trial testimony by Joyce Middleton, concerning this inculpatory information, should be suppressed as the fruit of the unlawful entry.
Because the defendant was the victim of an unlawful entry into his own apartment, there can be little doubt of his standing to urge suppression of evidence obtained following that entry.* He has the same standing to object to the discovery of inculpatory testimony as to the discovery of contraband as each is being admitted against him at trial (cf. People v Matos, 93 AD2d 772, wherein defendant lacked standing to challenge codefendant’s statements admitted against codefendant).
In the past, there were questions as to whether testimony of a witness can or should ever be suppressed. One view which had been taken was that testimony of a witness simply cannot be the fruit of a prior Fourth Amendment violation (see People v Eddy, 349 Mich 637; 3 LaFave, Search and Seizure, § 11.4, p 669). A second view was that the production of witness testimony should be treated no differently from the production of secondary physical evidence discovered through constitutional violations (United States v Alston, 311 F Supp 296). In United States v Ceccolini (435 US 268, 274-275), the Supreme Court declined to accept the government’s “per se rule that the testimony of a live witness should not be excluded at trial no matter how close and proximate the connection between it and a violation of the Fourth Amendment.” The court’s decision makes clear the fact that it is a living witness, rather than inanimate evidence which is the product of an unlawful search or seizure, does not necessarily render the *639 testimony admissible at trial (see, also, United States v Leonardi, 623 F2d 746, cert den 447 US 928; United States v Karathanos, 531 F2d 26, cert den 428 US 910; United States v Garcilaso de la Vega, 489 F2d 761, 762).
In Ceccolini (supra), a police officer improperly discovered gambling slips inside an envelope after he had entered the defendant’s shop to visit Hennessey, an employee. He asked Hennessey who owned the envelope and she replied that it belonged to the shop owner, Ceccolini. Hennessey later testified against Ceccolini, who moved to suppress his testimony as the fruit of the illegal search of the envelope.
The Supreme Court held that where the potential usefulness of a witness is revealed as a result of a Fourth Amendment violation, the admissibility of the witness’ testimony depends upon a balancing test. The court should consider (1) the degree of free will exercised by the witness in testifying (since the greater the willingness of the witness to freely testify, the greater the likelihood that he or she would have been discovered by legal means); (2) the time, place and manner of the initial questioning of the witness (as indicating whether the statements are truly the product of detached reflection and the witness’ desire to be cooperative and whether the illegality that led to discovery of the witness played any meaningful part in the witness’ willingness to testify); and (3) the relationship of the purpose of the unlawful conduct to the subject of the testimony (balancing the social cost of exclusion against the efficacy of exclusion in deterring illegal police conduct).
Applying this analysis to the case at bar, it is apparent that the testimony of Joyce Middleton must be suppressed. Here, the witness was initially questioned at the very scene of the arrest, almost immediately after the unlawful entry by the police. Ms. Middleton’s testimony can hardly be said to be either voluntary or the result of detached reflection. Moreover, unlike the officer who found the gambling slips in Ceccolini (supra), the detectives here certainly intended to obtain incriminating evidence when they questioned Ms. Middleton. Finally, the exclusion of her testimony is likely to encourage law enforcement officers to procure a warrant as required under Payton (supra) *640 before intruding into an individual’s home. The Ceccolini analysis commands the exclusion of this testimony.
This shall constitute the decision and order of the court.

 There is no question that defendant as a resident of the apartment had a reasonable expectation of privacy in the premises sufficient to grant him standing to challenge the police entry therein (Rakas v Illinois, 439 US 128).