OPINION OF THE COURT
Herbert A. Posner, J.
The indictment in this case charges the defendants, acting in concert, with the crimes of promoting gambling in the first degree, possession of gambling records in the first degree and two counts of possession of a gambling device committed on January 9, 1992. A hearing was held before me on November 13, 1992 on defendants’ motion to controvert a search warrant issued by Judge Muriel Hubsher on January 9, 1992 and to suppress evidence seized during execution of that search warrant. Detective Arthur Belovin, upon whose affidavit the warrant was issued, testified for the People and the defendant, Emilio Testa, testified on his own behalf and for his codefendants.
On January 26, 1993, the hearing was reopened and convened at the location of the premises designated in the search warrant, 149-45 14th Avenue, in the Whitestone business area.
The court found the testimony of Detective Belovin credible and did not find the defendant, Testa, to be a credible witness. Based on their testimony and its own observation of the premises, the court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
Detective Belovin, who has extensive experience and training in investigating unlawful gambling activity, made certain observations with respect to the two-story brick building located at 149-45 14th Avenue in Queens County. Upon entering the building, there was a flight of stairs leading to a steel door with a glass peephole that opens outward. Inside the door was a room about 20 feet by 40 feet in area. A video camera at the top of the stairs pointed down the staircase and there were *758 two satellite dish antennas with cables leading to the second floor on the rear roof of the building.
On January 8, 1992, Detective Belovin followed two men into these premises and up the stairs to the second floor door. He was directly behind the two men when they were admitted into the room by another man who asked the detective, "What are you doing? Who are you?” The officer responded, "I’m Vito. I’m looking for my cousin, Anthony.” The man said, "Who?” The detective answered, "Guess he ain’t here,” and left.
While in the room, Detective Belovin observed a man behind a counter with eight or nine other men seated at tables. He also saw slips of paper which, from his experience, he knew to be gambling slips for horse races, along with photocopies of racing forms on a table next to the entrance door. Based on these observations and his experience and training, the detective concluded that an illegal gambling operation was being conducted at the location.
Detective Belovin prepared an affidavit setting forth his observations and conclusions, which was submitted to Judge Muriel Hubsher. The Judge issued a search warrant dated January 9, 1992 for "the premises located at 149-45 Fourteenth Avenue, Second Floor and Roof, Queens, New York.” When the application for the warrant was submitted to Judge Hubsher, Detective Belovin was aware that there was another business on the second floor of the premises, to the left of the front apartment, but he did not bring this fact to the Judge’s attention.
On January 26, 1993, the court entered the premises at 149-45 14th Avenue and observed a stairway that led to a small, narrow vestibule about four feet wide and six feet long. As one ascended the stairs, the steel door, described in Detective Belovin’s affidavit, could be seen on the vestibule wall almost directly in front of the stairway. On the opposite wall and to the left of the stairway, there was a wooden door which could be observed only after entering the vestibule area and turning to the left. This door had a varnished finish, which gave it a honey color, whereas the steel door was painted in the same off-white color as the walls of the vestibule.
When observed by the court, the wooden door did not have a sign or other identification on it. However, the owner of the business conducted in the area behind that door, Rita Silver, appeared and agreed to be sworn as a witness. She testified *759 that there had always been a sign on the door identifying her business as "Crazylady — Unique Boutique Wear for Infants and Children.” She was surprised to find that the sign, which she indicated was 8 to 10 inches high and 18 inches long, was missing since she had seen it on the door about two hours earlier.* The witness also stated that there was a sign on the door every day, including January 8 and 9, 1992, when the search warrant was signed and executed, and that the police did not search nor attempt to search her premises when they executed the warrant on January 9,1992.
CONCLUSIONS OF LAW
The court finds that the facts alleged to establish probable cause for the issuance of the search warrant were not obtained as the result of an illegal trespass, as contended by the defendants. Detective Belovin was admitted into the second floor apartment along with two other men and he left as soon as he was confronted and questioned by the "doorman.” There was no forcible entry as in Wong Sun v United States (371 US 471) or United States v Griffin (502 F2d 959), nor was the evidence seized pursuant to the search warrant obtained as the result of an arrest effected by unlawful means as in People v Floyd (26 NY2d 558) and People v Graham, (90 AD2d 198). Detective Belovin’s entry into the apartment was no different than that of an undercover officer who enters premises to make a drug buy and, as in those cases, the information obtained by the detective was not the product of an illegal entry. (See, People v Arnau, 58 NY2d 27.)
The defendants also contend that the warrant was constitutionally deficient for not particularly describing the place to be searched. The warrant directed a search of the second floor and roof and there were two separate business units on the second floor, only one of which was intended to be searched. The rationale behind the specificity requirements is the protection of the Fourth Amendment right of privacy from arbitrary police intrusion by leaving nothing to the discretion of the officer conducting the search. (People v Nieves, 36 NY2d 396, 401.) The description must be "such that the officer with *760 a search warrant can with reasonable effort ascertain and identify the place intended.” (Steele v United States No. 1, 267 US 498, 503; People v Sprague, 47 AD2d 510, 511.) For this reason, a warrant to search a subunit of a multiple occupancy structure must delineate the subunit and not only describe the larger structure. (People v Rainey, 14 NY2d 35.) Moreover, the fact that the officers execute such a warrant "only against the proper subunit will not serve to sustain it.” (People v Henley, 135 AD2d 1136,1137; People v Yusko, 45 AD2d 1043, 1044.)
While the warrant in this case specified the place to be searched as the second floor and roof of the premises, the supporting affidavit described the area that was to searched as the room located at the top of the stairs behind the steel door with a glass peephole that opens outward. The door which led to the other business on the second floor was made of wood and was visibly different from the steel door referred to in the affidavit. It was to the left of the stairway and could not even be observed as one ascended the stairs. Most importantly, this door had a sign on it clearly identifying the children’s wear business being conducted in that portion of the premises. Therefore, the affidavit, which was available to the issuing Judge, described the place to be searched with sufficient particularity that a search of the other unit on the second floor, occupied by the children’s wear business, could not be construed as authorized by the warrant. The warrant itself limited the search to property constituting evidence of a gambling operation, thereby also particularizing the search area. (See, People v De Lago, 16 NY2d 289, cert denied 383 US 963; People v Taggart, 51 AD2d 863.)
Particularity is required in the description in a search warrant in order that the executing officer can reasonably ascertain the place to be searched. "This does not mean that hypertechnical accuracy and completeness of description must be attained but rather, from the standpoint of common sense * * * that the descriptions in the warrant and its supporting affidavits be sufficiently definite to enable the searcher to identify the persons, places or things that the Magistrate has previously determined should be searched or seized.” (People v Nieves, supra, at 401.) This was accomplished by the description contained in the warrant and supporting affidavit in this case. Moreover, the officer requesting the warrant also executed it and he knew, as his affidavit indicated, the apartment that was the target of the search. (See, People v Salgado, 57 *761 NY2d 662; People v Guerrero, 181 AD2d 1030; People v Brooks, 54 AD2d 333.)
The Court of Appeals in stating its "strong preference for search warrants” has noted that "the bona fides of the police will be presumed and the subsequent search upheld in a marginal or doubtful case.” (People v Hanlon, 36 NY2d 549, 558.) It follows that the failure to particularize the portion of the second floor to be searched should not be permitted to invalidate the search warrant in this case. The portion of the premises intended to be searched could be identified from the warrant and supporting affidavit and there was " 'no reasonable probability’ ”, in view of the identifying sign, that a search of the other business on the second floor would be made by the officer executing the warrant. (See, People v Guerrero, supra, at 1030, citing People v Mongno, 67 Misc 2d 815, 818.)
Accordingly, the defendants’ motions to controvert the search warrant and suppress the physical evidence seized when the warrant was executed, are denied.

 I took notice that when the court personnel and I arrived at the location, the defendants and their attorney were waiting for us. We had been delayed 15 minutes in leaving the courthouse. The complete disappearance of Ms. Silver’s door sign may have been a coincidence, but a fair inference could be drawn that one of the defendants had removed it from the door.