OPINION OF THE COURT
Wachtler, J.
The defendant was convicted of felony murder and related offenses for killing and raping Linda Jack in Brooklyn in the summer of 1974. The Appellate Division affirmed, without opinion. The defendant appeals. The primary issue is whether admissions made by the defendant to the police following an arrest without probable cause were properly allowed into evidence.
On the morning of August 10, 1974, the partly clad body of Linda Jack was found in an alleyway of a residential area of Coney Island. She had been stabbed in the throat and abdomen. A broad path of blood indicated that after being stabbed her body was dragged along the sidewalk and into an alleyway where, while dying, she was raped. Personal property belonging to the victim was found under a car near the scene of the stabbing. A palm print, found on the door of the car. was later identified, during the trial, as belonging to the defendant. In addition, there was the imprint from the sole of a corrugated boot found in the pool of blood at the scene of the stabbing.
Despite the overwhelming proof of guilt at trial the record of the suppression hearing indicates, that at the time defendant was taken into custody the limited information the police possessed which connected the defendant to the murder did not constitute probable cause for an arrest.
The evidence at the suppression hearing revealed that following the discovery of Linda Jack’s body in the alley *531 way, Detective Edward Zigo sought leads by canvassing bars and restaurants in the area inquiring whether the victim, who at the time of her death had a blood alcohol level of .18%, had been seen the night before. Detective Zigo learned that she had been seen at that time in the company of a person described only as “Ritchie”, a young white male, approximately 5 feet 10 inches to 5 feet 11 inches and weighing 200 pounds, with a pock-marked face. In addition the detective was informed that “Ritchie” had a girlfriend whose brother worked at “a frozen food outfit in Brooklyn.”
The next day, the officers sought out the brother, whose name they had been told was Paul. When the officers arrived at the frozen food establishment Paul was out and the officers decided to wait. After a time they heard a woman’s voice say “[n]o ‘Ritchie’, Paul is not here.” Concluding that the person to whom the remark was addressed met the general description of the person last seen with the murder victim, the officers took “Ritchie” into custody without any preliminary inquiries to determine his possible connection to the crime.
Of course, at the time the police confronted the defendant they could, acting on reasonable suspicion, have stopped him long enough to make inquiries concerning his possible involvement in the crime (see People v De Bour, 40 NY2d 210). It is clear that no such inquiries were made, and, by Detective Zigo’s own account of the facts, the defendant was peremptorily arrested. * Therefore, since it can be said as a matter of law that at the time of the arrest there was no probable cause (cf. People v Brnja, 50 NY2d 366), a period of illegal detention began.
However, it must be emphasized that the Constitution does not require a person illegally detained be forever granted immunity from prosecution or conviction (United *532 States v Crews, 445 US 463, 474). Indeed, the defendant himself does not make such a claim here, but contends only that certain statements he made subsequent to his illegal arrest should have been suppressed as the products of the illegal detention (cf. Wong Sun v United States, 371 US 471).
The defendant was not immediately questioned when he was taken to the police station. Instead, the officers left to speak to defendant’s girlfriend who they found at the frozen food establishment still waiting for her brother. Upon inquiry by the officers, she mentioned that although defendant rented an apartment across the street from hers, he frequently stayed with her, her brother and her mother at their apartment. The detectives requested that they be permitted to examine the clothes which the defendant kept at her apartment and she consented. A pair of the defendant’s boots apparently covered with blood were found.
Approximately three hours after defendant’s arrest and after advising defendant of his rights, Detective Zigo began the interrogation. In doing so he confronted defendant with the boots as well as with a bloody shirt discovered by the police at the scene of the crime. Defendant admitted owning the boots, but denied that the shirt was his. He then stated that he did not wish to undergo further questioning without first speaking to his brother, who was a police officer. The brother was called, and after defendant conversed with him privately, defendant gave two more statements which, like the first, were used by the People at trial. Defendant argues on this appeal that all three statements resulted directly from exploitation of the illegal arrest and therefore should have been suppressed.
While it is generally recognized that statements derived from an illegal detention will be suppressed and cannot be used at trial (Wong Sun v United States, 371 US 471, supra), it is equally true that the exclusionary rule is not automatic, and will not be applied if the impact of the illegal arrest does not closely touch upon the challenged evidence (see Nardone v United States, 308 US 338, 341). Although the prosecution will be denied the “poisoned fruit” from the “poisoned tree”, at some point the chain of causa *533 tion leading from the illegal activity to the challenged evidence may become so attenuated that the “taint” of the original illegality is removed (United States v Crews, 445 US 463, 471, supra; Wong Sun v United States, 371 US 471, supra). Those situations in which the detrimental impact of the illegal police action on the challenged evidence becomes so minute as to no longer justify the penalty of suppression under the exclusionary rule (see People v Martinez, 37 NY2d 662, 670), have been commonly grouped by the Supreme Court into two categories: where the evidence challenged was the product of a source independent of the defendant’s detention (see Silverthorne Lbr. Co. v United States, 251 US 385, 392); and where the discovery of the challenged evidence was attenuated from the illegal activity by a significant intervening event which justified the conclusion that that evidence was not the product of the illegal activity (see Wong Sun v United States, 371 US 471, supra).
At the suppression hearing the trial court concluded that the challenged statements were the result of confronting the defendant with the physical evidence and defendant’s conversation with his brother. The question, then, is whether these significant intervening events are legally sufficient to justify the conclusion that the taint of the illegal detention effectively was removed. We agree with the courts below that they are.
There is ample support for the conclusion that the boots were discovered not as a result of defendant’s detention, but rather as a result of the previously established lead between the “Ritchie” who had been seen with the deceased, and a girlfriend whose brother worked in Brooklyn. The police received no aid from defendant in tracking down this lead, and it was the independent act of consent by the girlfriend which resulted in the discovery of the boots. Similarly, the discovery of the bloody shirt was totally independent of the arrest, as it had been found at the death scene prior to any detention at all. As already noted, evidence unconnected with the detention need not be suppressed, since it was not the fruit of the illegal detention (see United States v Crews, 445 US 463, 475, supra; Sil *534 verthorne Lbr. Co. v United States, 251 US 385,392, supra). A logical corrollary of this conclusion is that because the evidence was legally seized, it was proper to present it to the defendant for an explanation. Confronting the defendant with this evidence can become a significant attenuating factor which the trial court reasonably could have considered, and indeed found, to be a precipitating cause of the admissions.
There is no indication that the arrest was orchestrated in such a manner as to intimidate or provoke defendant so as to overcome his reluctance to communicate with the officers (see Brown v Illinois, 422 US 590, 604). The defendant was not mistreated and was not questioned during the initial period of his detention. Although improper, the arrest was designed to hold the defendant, and not to provide the police with an opportunity to discover evidence which was not otherwise available (see United States v Crews, 445 US 463, 475, supra). Of course, after the evidence was secured and the admissions made, the detention was supported by probable cause.
Finally, we reject defendant’s reading of Dunaway v New York (442 US 200, supra), which he contends requires suppression of all evidence gathered during an illegal detention. The fact that an illegal detention is not to be construed as a predicate for immunity from the gathering or introduction of incriminating evidence (see United States v Crews, 445 US 463, 474, supra) is supported by the fact that in Brown v Illinois (supra), as well as other cases, the United States Supreme Court emphasized that there are legitimate ways to remove the taint of illegality. Significantly, as distinguished from this case, Dunaway involved the narrower question of the propriety of custodial detentions for investigative purposes when probable cause does not exist. While we agree that such an unreasonable detention violates the Fourth Amendment, we decline to extend the impact of that holding to require exclusion, after such a detention, of evidence acquired independently of the illegal arrest.
The exclusionary rule exacts a heavy penalty, and although its operation is justified, the exclusion of evidence *535 should be for therapeutic reasons and should not be used as a punitive measure. The application of the exclusionary rule requires a commonsense appraisal of whether the suppression of the challenged evidence will remove in the future the motive for similar improper police conduct. In this analysis, it has never been enough to show that evidence must be suppressed simply because it was discovered subsequent to an illegal arrest; it must in addition be shown that the police exploited the illegal detention in such a way as to establish that it was the detention which produced the challenged statements. In a case such as this, where the trial court is satisfied on sufficient evidence that the required nexus between the detention and the statements is absent, there would be no deterrence and therefore no reason to invoke the exclusionary rule (cf. Dunaway v New York, 442 US 200, 218, supra).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order affirmed.

 Although defendant was not told that he was under arrest at this time, but rather that he was being taken in for questioning, it is clear that his freedom to leave was effectively terminated and as Detective Zigo stated, he was under arrest for “all intents and purposes” (see Dunaway v New York, 442 US 200, 212-213; People v Allende, 39 NY2d 474; People v Cantor, 36 NY2d 106).