THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN A. BATTAGLIA, Appellant.

Fourth Department, July 9, 1981

APPEARANCES OF COUNSEL

*Rose H. Sconiers (Joseph Shifflett* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (Dennis Vacco of counsel), for respondent.*

### OPINION OF THE COURT

DILLON, P. J.

██ ██ Defendant was indicted for burglary in the third degree and grand larceny in the third degree and upon denial after a hearing of his motion to suppress physical evidence, he entered a plea of guilty to the burglary count in full satisfaction of the indictment. The primary issue presented on appeal is whether the seized evidence should be suppressed on the basis, as claimed by defendant, that he was unlawfully detained while the police pursued an investigation of whether a burglary had actually been committed. We hold that the police conduct was reasonably related in scope and intensity to the circumstances of the encounter and that neither the "frisk" nor detention of defendant requires suppression of the evidence subsequently seized.

The facts are gleaned from the suppression hearing. At 5:11 A.M. on January 10, 1980, Deputy Sheriff John Scirri, while on routine patrol, received a radio call of a burglary in progress at Alden Bowling Lanes, 1212 Sandridge Road in the Town of Alden. The call resulted from activation of a silent burglar alarm at those premises.

Scirri arrived at the scene within six or seven minutes and observed that defendant was approximately 175 feet from the Alden Lanes and walking toward an automobile which was parked on the road near an adjacent house. There was no vehicular traffic at the time and no other persons were seen in the area. Defendant entered the automobile which proceeded a short distance before Scirri brought it to a stop by placing the patrol car directly in front of it. On Scirri's request, defendant produced his license, registration and insurance card, none of which bore a Sandridge Road address, and Scirri immediately recognized defendant's name as that of a known burglar. He also observed that defendant was breathing heavily and when he asked defendant where he had been, defendant answered that he was "just walking around". Scirri also

noted that defendant's sneakers and socks were wet. He told defendant to step out of his vehicle and as defendant complied, Scirri heard the sound of steel "like loose change coming from his coat pocket" and observed that the pocket was "bulging". To be "cautious", he patted defendant down for weapons but noted only the pocket full of change.

At this point, Scirri "detained" defendant "on suspicion of burglary", handcuffed him and placed him in the patrol car. Within minutes the owner of the Alden Lanes and other police officers, including Trooper J. W. Barrett, arrived at the scene and all, except Trooper Barrett, entered the building. Defendant was also taken inside the building. Scirri saw that a pinball machine had been opened and damaged and that a side door had been "broken into, pried open". He then removed $49.28 in loose change and dollar bills from defendant's coat pocket[1] and asked Trooper Barrett, who had entered the building, to move defendant's car out of the roadway where it had been left upon Scirri's initial confrontation with defendant.

On the snow-covered ground outside, Scirri observed footprints, apparently made by sneakers, leading from the side door of the building through a field to where defendant's car had first been observed. As Scirri tracked the course of the footprints, Barrett entered defendant's car and, with the door open and the interior light on, he looked over the front seat to the space between it and the back seat which, according to his testimony, he "always" did, and saw a tire iron and a blue bank money bag on the floor. After removing the car from the road, he turned those items over to Scirri who then searched the vehicle and found seven rolls of coins containing $5 under the front seat.

Defendant's motion sought to suppress the money seized from defendant's pocket, the tire iron, the money bag which contained $602, and the rolled coins. In denying the motion the court found that the initial "stop and frisk was legal and proper under section 140.50 of the Criminal Procedure

---

1. Although there was some evidence that Scirri took possession of the loose change and dollar bills while standing next to defendant's vehicle, the record supports our conclusion that the money was not seized from defendant's pocket until he was brought inside the Alden Lanes.

Law" and that there "existed probable cause for the search of the vehicle and seizure of the articles and effects from the car and from the defendant's person." We agree.

Street encounters between the police and private citizens are inherently troublesome, involving as they do considerations of the duty of law enforcement officials to detect and apprehend criminals weighed against the right of citizens to be free from overbearing and arbitrary interference *(People v Chestnut,* 51 NY2d 14, 19; *People v Cantor,* 36 NY2d 106, 111). In determining, as we must, the reasonableness of police conduct in effecting the multiple searches and seizures under review, we necessarily relate the objectively credible belief of the police at each stage of the confrontation with the concurrent permissible scope of intrusion upon defendant's right to privacy and personal security *(Terry v Ohio,* 392 US 1; *People v Cantor, supra).* Thus with the rising level of police knowledge of relevant and competent factors, a commensurate intensity in police action may be justifiable, and evidence seized as events unfold may be admissible *(People v La Pene,* 40 NY2d 210, 223).

The intrusion upon a citizen's freedom may not reach the level of arrest, however, unless the police have probable cause to believe that a crime has been committed (CPL 140.10; see, also, *Dunaway v New York,* 442 US 200). Where the arrest is unlawful, evidence thereafter seized must be suppressed "absent an independent establishment of probable cause" *(People v Cantor, supra,* p 111). Put differently, the exclusionary rule will not be invoked where the challenged evidence, if otherwise lawfully seized upon probable cause, is unconnected with the impact of the illegal arrest *(People v Rogers,* 52 NY2d 527, 532, 533).

■ In applying these principles, we first note defendant's acknowledgment that Scirri, on responding to a report of a burglary in progress had "a duty to talk to the only person he saw in the general vicinity". It is thus necessarily conceded that the objective factors known to Scirri at that point were sufficient to create a reasonable suspicion that defendant had committed a crime. He was justified, therefore, in stopping defendant's automobile to make inquiry of him (CPL 140.50, subd 1; *Terry v Ohio,* 392 US 1, *supra).*

On his characterization that his behavior was normal and his answers to Scirri's questions after the stop were non-evasive and forthright, defendant argues that Scirri was not thereafter justified in ordering him out of the car. We disagree. When, as here, one is lawfully stopped, the *de minimis* intrusion of ordering him out of his car is a "mere inconvenience [which] cannot prevail when balanced against legitimate concerns for the officer's safety" *(Pennsylvania v Mimms*, 434 US 106, 111).

Beyond that, however, Scirri's observations and defendant's answers to his questions combined together to raise the level of Scirri's reasonable suspicion to a degree requiring further, but minimal, intrusion upon defendant's freedom. As defendant exited the automobile, other objective factors were added to Scirri's growing fund of relevant information. Defendant's coat pocket was "bulging" with what Scirri assumed from the "sound of steel" was an inordinate amount of "loose change". Scirri testified that the frisk was undertaken because he was "cautious" about weapons, a statement which may logically be interpreted in the circumstances of this encounter as an objectively justified expression of reasonable suspicion that he was in danger of physical injury (see CPL 140.50, subd 3). The pat-down frisk of defendant, though failing to produce a weapon, was thus constitutionally and statutorily justified.

Clearly, the circumstances known to Scirri at this point were strongly indicative of criminal conduct on defendant's part (compare *People v Howard*, 50 NY2d 583, 590, cert den 449 US 1023 [relied upon by defendant, where the police officers "were confronted only by facts susceptible of innocent interpretation"]). His immediate burden, as is ours now but with the added benefit of hindsight, was to balance the "competing * * * considerations" of a police officer's duty to detect crime and apprehend criminals with "the indisputable right[s] of persons to be free from arbitrary interference by law enforcement officers" *(People v Chestnut*, 51 NY2d 14, 19, *supra).* His choice was either to allow defendant to re-enter his vehicle and leave the scene, with the obvious result that evidence could be lost or destroyed, or to detain him for the

brief period required to determine whether the Alden Lanes had actually been burglarized.

Defendant would have us balance those considerations in his favor on the basis that Scirri, in derogation of defendant's privacy interests, arrested him without probable cause. It is said that Scirri's duty was to permit defendant to leave the area. It would follow from that argument, according to defendant, that the subsequent seizures were the "fruits" of the unlawful detention and that suppression is required.

Despite its superficial appeal, the argument must be rejected. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* [*Terry v Ohio*, 392 US 1] recognizes that it may be the essence of good police work to adopt an intermediate response * * * A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *(Adams v Williams*, 407 US 143, 145-146.)

Here, at about 5 A.M., Scirri confronted the sole person found in the immediate vicinity of a commercial building where a silent burglary alarm had only moments before been activated. The suspect was seen walking to, entering and then operating the only automobile to be observed in movement at that time. He was thereafter noted to be out of breath and wearing wet sneakers and socks. Upon examining his identification documents, Scirri recognized his name as that of a known burglar and further noted that he did not live in the immediate area. The suspect's explanation that he was "just walking around" in a neighborhood not his own at that hour of the morning, in light of all the surrounding circumstances, was hardly satisfactory. Upon observing the bulging pocket of loose change, Scirri was justified in momentarily maintaining the *status quo* while determining whether the closely proximate Alden Lanes had been burglarized.

It is not argued, nor could it be, that upon entering the premises and seeing the objective signs of burglary, Scirri did not then have probable cause to believe that a crime had been committed by defendant. He did, and even though the momentarily extended detention of defendant for the purpose of accommodating those observations was not, in our view, constitutionally proscribed, it is otherwise obvious that probable cause was established from factors wholly independent of the extended detention. Thus the issue of whether handcuffing and immobilizing defendant constituted an unlawful arrest does not bear upon the admissibility of the seized evidence *(People v Rogers,* 52 NY2d 527, *supra).* It follows that the money seized from defendant's person should not be excluded as evidence.

■ Additionally, although the precise issue is not addressed by defendant, the evidence obtained as a result of Trooper Barrett's observation of the rear floor area upon entering defendant's automobile for the purpose of removing it from the public highway, need not be suppressed since it was discovered in his plain view. He was lawfully present in the automobile, its discovery was inadvertent and its incriminatory nature was apparent from its outward appearance (see *Coolidge v New Hampshire,* 403 US 443; *People v Spinelli,* 35 NY2d 77). The tire iron and the bank money bag were admissible not only for that reason, but on the further basis, which also supports the seizure of the seven rolls of coins by Scirri, that a complete search of the vehicle was justified in the circumstances (see *Chambers v Maroney,* 399 US 42; compare *Coolidge v New Hampshire, supra).*

Finally to the extent that the bank money bag and the rolls of coins may be viewed as containers or receptacles (see *Robbins v California,* 453 US —) defendant has no standing to claim a privacy interest in either (see *People v Ponder,* 77 AD2d 223, and cases cited therein).

The judgment should be affirmed.

HANCOCK, JR., J. (dissenting). The established rule that the custodial detention and search of a suspect without probable cause is an illegal invasion of his rights under the Fourth Amendment of the United States Constitution com-

pels me to dissent (see *Dunaway v New York*, 442 US 200; *People v Henley*, 53 NY2d 403). The majority do not find that Officer Scirri had probable cause for an arrest when after patting defendant down and finding that he was unarmed he handcuffed defendant, searched his pocket and placed him in the police vehicle. Indeed such a determination would, in my opinion, be precluded by the court's unanimous decision in *People v Henley (supra)*, holding the detention in an almost identical situation to be unlawful. Rather, the majority, relying on precedents such as *Adams v Williams* (407 US 143) and *People v Chestnut* (51 NY2d 14) hold that it was not an unlawful invasion of defendant's constitutional rights to handcuff him, search his pocket, put him in the patrol car and transport him to the scene of the burglary because the detention was "for the brief period required to determine whether the Alden Lanes had actually been burglarized". I had thought such contention was put to rest by *Dunaway v New York (supra,* p 212), where the Supreme Court (quoting *United States v Brignoni-Ponce,* 422 US 873, 881-882) stated: " 'The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, *but any further detention or search must be based on consent or probable cause.'* " (Emphasis added in *Dunaway.)* Nor can the police conduct in arresting defendant be supported, as the majority opinion suggests, by viewing it not as an arrest but as an extension of the stop and frisk under authority of *People v Chestnut (supra).* The frisk of defendant had already taken place and had revealed no weapon. There was no danger to Officer Scirri and no need for the precautionary measures which justified the police conduct in *People v Chestnut (supra)* and *Adams v Williams (supra).* It seems evident that when after the pat-down it appeared that defendant was unarmed, the further invasion of defendant's rights cannot now be justified by characterizing it as an extension of that pat-down. The majority point out the dilemma facing Officer Scirri who had reason to suspect that defendant had committed a burglary, but had no probable cause to arrest him. One can sympathize with his desire to hold defendant until evidence establishing probable cause could be found.

I know of no precedent, however, holding that defendant's rights to be free from unreasonable searches and seizures must yield to such practical considerations. Indeed it was just this sort of argument that the court rejected in *Dunaway v New York (supra,* pp 211-212).

Because the arrest of defendant was illegal the money taken from his pocket and the items discovered subsequently by Officer Barrett in searching his vehicle must be suppressed as flowing directly from the illegal arrest. The money was found in the illegal search of defendant's pocket. Had it not been for the initial illegal detention of defendant, the seizure and search of his car would not have taken place. It cannot be said that the money found on defendant or the roll of coins, money bag and tire iron discovered in the car were "the product of a source independent of the defendant's detention" or that the illegal activity was attenuated "by a significant intervening event which justified the conclusion that that evidence was not the product of the illegal activity (see *Wong Sun v United States,* 371 US 471)" *(People v Rogers,* 52 NY2d 527, 533). I must therefore conclude that the conviction should be reversed, the motion to suppress the items found on defendant's person and in his automobile granted, and a new trial granted.

SIMONS, DOERR and MOULE, JJ., concur with DILLON, P. J.; HANCOCK, JR., J., dissents and votes to reverse the judgment, grant the motion to suppress and grant a new trial, in a separate opinion.

Judgment affirmed.