■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JUAN BARGAS and ANGEL ROMERO, Respondents. — Order, Supreme Court, New York County (Martin Klein, J.), entered June 3, 1982, granting defendants' motion to suppress their postarrest statements following a *Huntley* hearing, unanimously reversed, on the law, and the matter remanded to Trial Term to make the necessary findings of fact and conclusions of law with respect to defendants' challenge to the voluntariness of said statements and to consider any additional evidence defendants may wish to offer on the issue of attenuation. ¶ The following facts were adduced at the suppression hearing. At approximately 11:00 P.M. on January 7, 1982, Detective Dennis O'Sullivan observed defendants Bargas and Romero step out of a Toyota which had parked in a bus stop on Amsterdam Avenue, just south of West 114th Street. The driver remained in the Toyota with the motor running while Bargas and Romero walked west on 114th Street, looking into the entrances of buildings, both commercial and residential. Thinking that Bargas and Romero fit the description of two suspects in a series of recent neighborhood robberies, Detective O'Sullivan placed a radio call to backup officers for assistance. Eventually Bargas and Romero turned around and walked back toward the Toyota. After motioning to the driver they both began to walk south on Amsterdam Avenue. As the Toyota began to move forward, two other police officers, who had responded to Detective O'Sullivan's radio transmission, stopped both Bargas and Romero and the driver. One of the officers testified that he heard the

"ping" of a metallic object hitting the ground just as he yelled to Bargas and Romero to stop. Neither the driver nor Bargas or Romero could produce a driver's license or car registration; one of them claimed that he had borrowed the Toyota from a friend. ¶ Suspicious that Bargas and Romero had been involved in the recent neighborhood robberies and anxious to determine if the Toyota had been stolen, the officers then took all three men to the station house. There, through a computer check of the Toyota's vehicle identification number, it was determined that the vehicle had, in fact, been stolen. All three men were immediately arrested and the *Miranda* warnings administered. Romero explained that a friend had given them the car for $40. A few minutes later a civilian came to the station house with a handgun which he had picked up from the street in the vicinity where Bargas and Romero had been arrested. ¶ Several hours later, after having been given the *Miranda* warnings again, Bargas and Romero were questioned separately about a robbery committed earlier that day. Each of them gave a recorded statement which implicated both of them and a third perpetrator in that robbery. Some seven hours later that morning, at about 10:00 A.M., after the *Miranda* warnings had been administered for the third time, Bargas and Romero were again questioned individually. Each of them repeated the statement he had made earlier. Bargas further admitted that he had thrown a gun away just before his arrest when he saw the police officers approach. Trial Term granted the motion to suppress the statements, finding that, although the officers were entitled to make inquiry of Bargas and Romero, the forcible stop was unjustified and thus the statements were the "products" of an unlawful seizure. ¶ The People, for purposes of this appeal, concede the illegality of defendants' seizure but, pointing to the discovery that the Toyota was stolen and the recovery of the gun as significant intervening events, they argue that the police had probable cause sufficiently independent of the initial illegality to break the causal connection between it and the statements. We agree and find that this record contains sufficient by way of attenuating circumstances to conclude that defendants' statements were not obtained by exploitation of the initial seizure. (See *Wong Sun v United States,* 371 US 471, 487-488; *Brown v Illinois,* 422 US 590; *People v Rogers,* 52 NY2d 527, 553.) Defendants' statements were made only after the officers had discovered that the Toyota had, in fact, been reported stolen and they had lawfully placed defendants under arrest for possession of stolen property. Although the officers considered defendants as suspects in an armed robbery they also had a bona fide interest in determining whether the Toyota was stolen, as reflected by their pursuit of that investigation immediately upon their arrival at the station house. Thus, defendants' detention was not, as they argue, a sham. While it is true that the officers' awareness of the Toyota's vehicle identification number was a direct result of the seizure of defendants and the car, the police computer's stolen car information had been independently compiled. Thus, the discovery of proof sufficient to hold defendants for possession of a stolen car was not made through exploitation of the seizure. Only the Toyota's identification number was thus obtained; the remainder of the investigation had an independent basis. (See *People v Pleasant,* 54 NY2d 972, 974.) Moreover, once the officers had probable cause to hold defendants for one crime, they were not restricted in their questioning to just the details of the crime for which the arrest had been made, as long as their inquiries had a good-faith basis. ¶ Contrary to defendants' claim, the argument that the report of a stolen car provided an independent basis for a finding of a probable cause was presented to Trial Term. Although perhaps not as artfully phrased as it might have been, it was plainly sufficient to apprise the court and defendants' attorney of the attenuation theory based upon a lawful detention at the time defendants' statements were made. Furthermore, the record

provides a sufficient evidentiary basis to resolve the issue on appeal. ¶ Finally, the recovery of the gun at the scene of the arrest, coupled with the metallic "ping" which one of the officers heard, served to heighten the officers' original suspicions that defendants were, indeed, robbery suspects. It was only natural for the officers to question them about the crimes to which the gun appeared to be linked. (See *People v Rogers,* 52 NY2d, at pp 533-534.) It was the officers' confrontation of defendants with the discovery of the gun which prompted their confessions to the robbery. ¶ While the relevancy of the recovery of the gun was not urged by the People upon Trial Term as an attenuating factor, we may take note of it on appeal in the exercise of our interest of justice jurisdiction. (CPL 470.15.) As in the case of the discovery that the Toyota had been reported stolen, the record is sufficiently developed to permit a resolution of this aspect of the attenuation issue, even though it is being raised for the first time on appeal. Since, however, defendants may not have fully understood that an attenuation argument was being advanced, and the matter must be remanded, in any event, for findings of fact and conclusions of law on the issue of voluntariness inasmuch as Trial Term never reached the issue, defendants, in the circumstances, should be afforded the opportunity to offer any additional proof they might have on the issue of attenuation. Concur — Murphy, P. J., Sandler, Sullivan, Carro and Kassal, JJ.