■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ULYSSES PARRIS, Appellant.—Judgment reversed on the law, motion to suppress granted and indictment dismissed. Memorandum: On December 21, 1983 at approximately 2:00 A.M. Clarietta Nowden returned home after visiting a friend. She backed her automobile into her garage and as she got out of the automobile she was attacked by an armed assailant. A scuffle ensued during which Ms. Nowden was able to wrest the gun from the assailant but not before he struck her on the head with it. She screamed and, when he covered her mouth with his left hand, she bit his left index finger and a piece of the skin tissue became lodged in her lower teeth. The assailant fled the scene. He wore a gray wool cap which covered his face except for his eyes and she was unable to identify him. The victim gave a general physical description of her assailant as being a black male of medium build, 5 feet, 7 inches tall, and wearing a short-length tan trench coat.

An investigating officer found a man's wallet lying in snow in the victim's driveway approximately 15 to 20 feet from the garage where the attack occurred. The wallet contained a Social Security card and a credit card, each bearing the name of defendant. Defendant was married to the victim's sister and resided across the street from the victim's residence. The police went to defendant's home and was informed by his wife that she did not know his whereabouts and that he had not been home all evening. As the officers were leaving defendant's home, they encountered two men walking up the driveway towards them. One officer inquired of defendant if he was Ulysses Parris and he acknowledged that he was; defendant was not wearing clothing which matched the clothing that the victim said her assailant wore. The officer then told defendant that he wanted to speak with him; defendant responded that he wanted to talk to his wife and proceeded towards the door to his residence. Defendant was arrested and was taken to a hospital where the victim was being treated. The victim viewed defendant who was seated in a police car, but she was unable to identify him as her assailant. She suggested that the

police officer examine defendant's left hand since she had bitten her assailant on the left hand. Defendant displayed his left hand and the officer observed that a large piece of skin was missing from defendant's index finger. Defendant was then transported to the Public Safety Building where he waived his *Miranda* rights and gave the police inculpatory statements. He also aided the police in making diagrams which disclosed the location of clothing that he had discarded.

Defendant made a pretrial motion seeking to suppress his oral and written statements, the showup identification, the observations of the apparent bite wound, the diagram he drew, and the items of clothing discovered with the aid of that diagram, on the ground that the evidence was fruit of an illegal arrest. The hearing court denied the motion, finding that the police had probable cause to arrest defendant, and that the statements, identification and clothing were thus not fruits of an illegal arrest. We disagree. In our view the court erred in denying defendant's motion to suppress since his arrest was without probable cause.

"Probable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing that the offense has been committed" *(People v Oden,* 36 NY2d 382, 384), and that the person arrested is the perpetrator *(People v Carrasquillo,* 54 NY2d 248, 254). The existence of probable cause "must necessarily turn on the facts in each individual case" *(People v Green,* 35 NY2d 193, 195). The bases to establish the existence of probable cause must not only be reasonable, but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator *(People v Carrasquillo, supra,* at 254; *see also, People v De Bour,* 40 NY2d 210, 216).

Since we conclude that the initial seizure of the defendant was unlawful, the fruits of that unconstitutional seizure must be suppressed *(People v Cantor,* 36 NY2d 106, 114; *see, Wong Sun v United States,* 371 US 471). Contrary to the view of the dissenters, the derivative incriminating evidence which was obtained after defendant's arrest was not the product of a source unrelated to defendant's arrest, but was a direct result of the illegal arrest; nor was the illegal conduct attenuated "by a significant intervening event which justified the conclusion that that evidence was not the product of that illegal activity (see *Wong Sun* v *United States, supra)" (People v Rogers,* 52 NY2d 527, 533; *see also, People v Henley,* 53 NY2d 403).

The invasion of defendant's rights to be free from unreason-

able searches and seizures cannot be justified, as suggested by the dissenters, by resort to the rule of inevitable discovery. It is not necessary to decide whether the evidence sought to be suppressed is primary or secondary, for it is clear that the tainted evidence was the direct result of the initial police misconduct in arresting defendant without probable cause. The inevitable discovery rule may not be used to save from suppression "evidence illegally obtained during or as the immediate consequence of the challenged police conduct" *(People v Stith,* 69 NY2d 313, 318). Absent the illegal arrest of defendant on his own premises and his transportation to another place, the derivative incriminating evidence would not have been revealed *(see, Dunaway v New York,* 442 US 200; *People v Hicks,* 68 NY2d 234, 239).

Finally, aside from the probable cause issue, the contentions urged by the dissenters were not addressed by the suppression court or argued by the parties in our court.

All concur, except Callahan and Lawton, JJ., who dissent and vote to affirm in the following memorandum.

Callahan and Lawton, JJ. (dissenting). We do not agree with the majority that the suppression court erred in finding probable cause for the arrest of defendant. The police investigation disclosed the presence of defendant's wallet in the unlikely location of the victim's driveway, but a short distance from the scene of the attack. Since the victim related that a scuffle had occurred, it was not unreasonable for the investigating officer to conclude that defendant was involved. In arresting defendant, the police officer was acting on more than surmise or a hunch *(People v Laskaris,* 82 AD2d 34, 38-39). Further, even if the arrest were held to be illegal, we do not believe that the statements and physical evidence subsequently discovered need be suppressed. The Court of Appeals in *People v Rogers* (52 NY2d 527, *cert denied* 454 US 898), in speaking of the necessity for the suppression of the "poisoned fruit" of the "poisoned tree," outlined two well-recognized exceptions, both of which we believe are applicable to the facts of this case. Judge (now Chief Judge) Wachtler stated (at 532-533): "While it is generally recognized that statements derived from an illegal detention will be suppressed and cannot be used at trial *(Wong Sun v United States,* 371 US 471, *supra),* it is equally true that the exclusionary rule is not automatic, and will not be applied if the impact of the illegal arrest does not closely touch upon the challenged evidence (see *Nardone v United States,* 308 US 338, 341). Although the prosecution will be denied the 'poisoned fruit' from the 'poisoned tree', at some

point the chain of causation leading from the illegal activity to the challenged evidence may become so attenuated that the 'taint' of the original illegality is removed *(United States v Crews,* 445 US 463, 471, *supra; Wong Sun v United States,* 371 US 471, *supra).* Those situations in which the detrimental impact of the illegal police action on the challenged evidence becomes so minute as to no longer justify the penalty of suppression under the exclusionary rule (see *People v Martinez,* 37 NY2d 662, 670), have been commonly grouped by the Supreme Court into two categories: where the evidence challenged was the product of a source independent of the defendant's detention (see *Silverthorne Lbr. Co. v United States,* 251 US 385, 392); and where the discovery of the challenged evidence was attenuated from the illegal activity by a significant intervening event which justified the conclusion that that evidence was not the product of the illegal activity (see *Wong Sun v United States,* 371 US 471, *supra)."*

We believe that the disclosure by the victim to the police at the hospital that she had bitten her attacker severely on the finger was unrelated and independent of the arrest and, therefore, need not be suppressed. This information, together with the police officer's observation of defendant's finger, constituted a "significant intervening event" which provided probable cause and all evidence subsequently obtained was attenuated from the illegal activity by this event *(People v Rogers, supra,* at 533).

Further, were we to conclude that the disclosure by the victim was not independent of the arrest, we nevertheless would hold that the "inevitability of discovery" doctrine would apply. As the United States Supreme Court wrote in *Wong Sun v United States* (371 US 471, 487-488, *supra):* "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)."

The key inquiry, therefore, is whether the evidence was "come at by exploitation of * * * illegality". In line with this reasoning, courts have developed the inevitable discovery doctrine which removes any taint " 'by establishing that the unlawful act from which it resulted was not a *sine qua non* of its discovery.' (Maguire, How to Unpoison the Fruit, 55 J.

Crim. L. C. & P. S. 307, 313.)" *(People v Fitzpatrick,* 32 NY2d 499, 506-507.) Thus, fruits need not be suppressed where there is "a very high degree of probability that the evidence in question would have been obtained independently of the tainted source" *(People v Payton,* 45 NY2d 300, 313, *revd* 445 US 573, *on remand* 51 NY2d 169). The doctrine may not be used to admit so-called "primary" evidence (that obtained as a direct result of the illegal police activity) but may be used to admit what was "found as a result of information or leads gleaned from that [primary] evidence. The rationale is that when the secondary evidence would have been found independently in any event, 'the prosecution [should not be] put in a *worse* position simply because of some earlier police error or misconduct' " *(People v Stith,* 69 NY2d 313, 319, quoting *Nix v Williams,* 467 US 431, 443 [emphasis in original]).

Here, defendant was arrested and transported by the police to the hospital for possible identification by the victim. He made no incriminating statements at that time, no physical evidence was seized from him and the victim was unable to identify him as the perpetrator. After the showup failed to yield an identification, however, the victim informed the police that she had bitten her attacker's left hand. An inspection of defendant's hand revealed a portion of skin missing from the tip of his left finger. Defendant was then taken to the Public Safety Building and after he was informed of his *Miranda* rights, chose to give a statement and provide the police with a diagram disclosing the location of the articles of clothing later seized. Thus, the turning point in the case was the victim's revelation that she had bitten her attacker and there is no connection between that discovery and the earlier illegal arrest. Clearly, the police would have obtained that information independently from a simple interview of the victim, and the illegal arrest was not exploited to arrive at such evidence *(see, People v Conyers,* 68 NY2d 982; *People v Brown,* 122 AD2d 567, *lv denied* 68 NY2d 810; *People v Graham,* 90 AD2d 198, *lv dismissed* 59 NY2d 766, *cert denied* 464 US 896, *reh denied* 464 US 1005).

Accordingly, inevitable discovery may be applied to save from suppression that evidence which would have been found regardless of the earlier police misconduct *(see, People v Fitzpatrick, supra).*

In making a "commonsense appraisal of whether the suppression of the challenged evidence will remove in the future the motive for similar improper police conduct" *(People v Rogers,* 52 NY2d 527, 535, *supra),* we find that it will not.

Further, we conclude that the facts that the victim advised that she bit the finger of the attacker and that defendant's finger disclosed such an injury lack the "required nexus" between the detention and the statements to warrant the suppression of said evidence (People v Rogers, supra, at 535). This is especially true in the present case where, without question, the police possessed sufficient evidence to take defendant to the hospital for a showup identification (People v Hicks, 116 AD2d 150, affd 68 NY2d 234). (Appeal from judgment of Supreme Court, Monroe County, Bergin, J., at trial; Boehm, J., on suppression hearing—attempted rape, first degree, and assault, second degree.) Present—Dillon, P. J., Callahan, Pine, Lawton and Davis, JJ.