Chief Judge Wachtler, J.
(dissenting). There is no sound *627 basis in law or public policy — indeed it would seem to be against public policy — for this court to suppress a confession which was wholly the product of a defendant’s free will, unaffected by any police illegality. The majority does so in this case, ostensibly because the application of factors found relevant in Brown v Illinois (422 US 590), indicate that a second confession was not sufficiently attenuated from a prior confession. Nowhere, however, in the majority opinion, or in the Appellate Division concurring opinions, or in the trial court opinion, are there any facts from which it can be reasonably inferred that either the first confession or the second confession was the product of anything other than defendant’s independent and self-motivated decision to confess to killing his girlfriend. I do not believe that the majority’s purported establishment of a connection, in the abstract, between two completely voluntary confessions provides a basis for suppression here.
The facts are unusual but uncomplicated. Defendant’s girlfriend, Thelma Staton, was killed when her throat was cut with a knife. The police, with probable cause to believe that defendant did the killing, but without an arrest warrant, went to question defendant at his home. The police knocked at the door, and, after some delay, defendant came to the door and asked "who is it.” A detective held his badge up to the peephole, and defendant then opened the door, stating "I’m glad you came for me.” Defendant was then read the Miranda warnings, which he acknowledged that he understood. He then invited the police officers to sit down, and said that he was going to fix himself a glass of wine. One detective then sat down, and told defendant that he wanted to talk to him about the death of Thelma Staton. After pouring the wine, defendant stated that he loved Thelma Staton, but that she was not bringing up her child "right,” and that he had killed Thelma Staton by cutting her throat with a knife.
Defendant was then arrested and taken to the police station. The Miranda warnings were again read to him, and he indicated that he understood them. Defendant then dictated a confession to a police officer, who wrote it down as defendant spoke. When the confession was completed, defendant read it, and made one change by crossing out a section which stated that he had taken the murder weapon with him after the crime. This was changed to read that defendant had thrown the knife out of the window immediately after killing the *628 victim. After this change was made, defendant signed the confession.
These facts were found by the trial court, were undisturbed by the Appellate Division, and, finding support in the record, now bind this court.
On these facts, the two lower courts found a Payton violation, apparently holding that defendant did not sufficiently consent to the entry of the police into his home (see, Payton v New York, 445 US 573). I agree with the concurrers at the Appellate Division that this conclusion is questionable. Indeed, although the trial court did, as the majority notes, denominate the Payton issue "clear”, it nevertheless appears that the lower courts did not come to grips with the potentially dispositive issue of consent. But, even if there was no consent, and thus a Payton violation, I am at a loss to understand what legal principle necessitates suppression of the defendant’s confessions.
Initially, I note that this question is reviewable by us. Both lower courts held without analysis that the first confession was suppressible. However, simply put, when using the correct legal standard together with the facts found by those courts this conclusion is without basis (Cohen and Karger, Powers of the New York Court of Appeals §§ 114, 115 [rev ed]). Indeed, the majority exercises its power to review the suppression of the second confession on this very basis.
The fundamental principle here, repeated by the United States Supreme Court and this court so often as to be axiomatic, is that "it has never been enough to show that evidence must be suppressed simply because it is discovered subsequent to an illegal arrest; it must in addition be shown that the police exploited the illegal detention in such a way as to establish that it was the detention which produced the challenged statements” (People v Rogers, 52 NY2d 527, 535, cert denied 454 US 898; see, People v Conyers, 68 NY2d 982, 983; People v Arnau, 58 NY2d 27, 32; Rawlings v Kentucky, 448 US 98; Brown v Illinois, 422 US 590, supra). We have consistently rejected, and should reject again today, the notion that "a person illegally detained be forever granted immunity from prosecution or conviction” (People v Rogers, supra, at 531). Instead, our judgment should be anchored upon the settled rule that defendant’s statements may be admissible against *629 him at trial provided that the statements "were acts of free will unaffected by any illegality in the initial detention” (Rawlings v Kentucky, supra, at 110).
Applying these principles in Brown v Illinois (supra, at 603), the Supreme Court held that when an illegal arrest has been followed by a confession, the question becomes whether the confession was actively produced by the arrest, or by some independent force. In Brown the court stated that relevant factors to analyze this question were the presence of Miranda warnings, temporal proximity of the arrest and confession, intervening circumstances, and the flagrancy of police misconduct (id., at 603-604). But these are only factors, none of which is dispositive, to be used as tools to assess the independence of a confession from any police illegality; mathematical summation of values accorded to each factor is no substitute for sensitive assessment of the facts of each case, and the reaching of a well-founded conclusion whether a police illegality actively caused a confession.
The case law bears this out; where it is clear that a confession is the product of a force independent from an allegedly unlawful detention, the confession is admissible. For example, in People v Rogers (supra), a confession caused by defendant being confronted with legally obtained evidence was admissible; in Rawlings v Kentucky (supra), a confession caused by the police discovering physical evidence in a purse was admissible; and in People v Matos (93 AD2d 772), the defendant’s statements caused by the knowledge that his girlfriend told the police "about the rape” were admissible.
Similarly, on the facts in this record, defendant’s confessions manifestly were not the product of a Payton violation. Defendant was expecting the arrival of the police, as shown by his reaction that he was "glad” when they got there. Nor can it reasonably be inferred that defendant was feeling any police coercion as he fixed himself a glass of wine to make himself more comfortable, and then explained how he had both loved his girlfriend and killed her. These are not the statements and actions of a man reacting to police coercion or illegality; on the contrary, these facts portray a man who quite independently had decided to confess before the police arrived, and whose decision, therefore, was formed independently from any illegal police conduct. As a result, neither the first confession, nor the second confession which followed, were in any way actively produced by any police illegality.
*630 Thus the case law does not require suppression here. My disagreement with the majority, however, goes beyond this. I take issue with the assertion that deterrence of Payton violations requires suppression in this case; indeed, I believe that suppressing this defendant’s freely and independently given confessions will, in net effect, encourage police conduct posing greater threats than are presented in this case.
As to the deterrence argument: the majority asserts that if we do not suppress here we will encourage Payton violations. In reality, however, use of defendant’s confessions will not have this effect. Here the defendant welcomed the police, sipped wine and confessed. If we did not suppress here the rule would remain, as it has long been, that there will be suppression if the confession is actively produced by police illegality. Given this fact, the deterrence benefit furthered by this case eludes me. Armed with probable cause to arrest a suspected murderer, surely the police will not forego obtaining a warrant with hopes of meeting a congenial host, and thereby circumventing Brown v Illinois (supra). Nor should we be worried that the police will choose to run the risk that, if this oddity does not occur, the whole police investigation will be jeopardized, including not only confessions obtained, but all physical evidence discovered as well.
Even more distressing, this decision will encourage more intrusive and dangerous police conduct than that which the majority erroneously believes it needs to deter. The majority suppresses here not on the usual grounds of the lack of probable cause, but, ironically, because there was probable cause. The majority’s rationale turns directly on that finding: it reasons that because there was probable cause there should have been a warrant, but because there was no warrant, suppression is required.
But what is missed here is that if the police had been conducting a routine investigation, without probable cause, defendant’s confessions would be admissible. Thus in the name of deterrence, for the sake of suppressing a manifestly independent confession, the majority encourages the questioning of suspects before probable cause is obtained.
Where deterrence is unnecessary, and where defendant’s confessions were not the product of police illegality, there should be no suppression. I therefore dissent.
*631 Judges Kaye, Alexander, Titone and Hancock, Jr., concur with Judge Simons; Judge Titone concurs in a separate opinion; Chief Judge Wachtler dissents and votes to affirm in another opinion in which Judge Bellacosa concurs.
Order reversed, etc.