THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARFIELD BECKFORD, Appellant. [976 NYS2d 160]—

Appeal by the defendant from a judgment of Supreme Court, Queens County (Kron, J.), rendered April 7, 2011, convicting him of robbery in the second degree, petit larceny, criminal possession of stolen property in the fifth degree, criminal mischief in the fourth degree, possession of burglar's tools, and resisting arrest, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Grosso, J.), of that branch of the defendant's omnibus motion which was to suppress identification testimony and physical evidence on the ground that it was the product of his unlawful seizure by the police.

Ordered that the judgment is affirmed.

Contrary to the defendant's contention, his initial detention by the complainant, an off-duty police officer, was not unlawful. The hearing evidence demonstrates that the complainant discovered the defendant and another man standing next to the complainant's car at approximately 2:30 a.m. in a desolate commercial area. The car, which the complainant had parked there some 90 minutes earlier, had been broken into, its interior was in disarray, and items were missing from it. The defendant was holding two large plastic bags and, upon seeing the complainant, he and the other man promptly walked away from the vehicle and crossed the street. Under the totality of these circumstances, the complainant's detention of the defendant was supported by reasonable suspicion (*see generally People v De Bour*, 40 NY2d 210, 223 [1976]; *People v Flores*, 88 AD3d 902 [2011]; *People v Bryant*, 246 AD2d 662 [1998]).

Likewise, the subsequent detention of the defendant by another police officer was supported by probable cause, including information received from the complainant indicating that the defendant had taken his property and had engaged in a violent physical altercation with him (*see People v Gonzalez*, 13 AD3d 465 [2004]; *People v Sanabria*, 266 AD2d 41 [1999]). Moreover, the Supreme Court properly denied suppression of the two bags and their contents because they were abandoned by the defendant (*see People v Soscia*, 96 AD3d 1081 [2012]; *People v Rogers*, 92 AD3d 903 [2012]).

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620 [1983]), we find that it was legally sufficient to prove his guilt of robbery in the second degree beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342, 348 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]). Mastro, J.P., Lott and Sgroi, JJ., concur.

Hall, J., concurs in the result, with the following memorandum:

I agree with the result reached by the majority, but write separately to express my view that the initial stop and detention of the defendant was unlawful. The hearing testimony

established that at approximately 1:00 a.m. on April 1, 2010, the complainant, an off-duty police officer, went to a gymnasium in Queens. When he exited the gymnasium at approximately 2:30 a.m., he saw the defendant and another individual standing next to his car. The defendant was carrying two white plastic bags. As the complainant continued to walk toward his car, the defendant and the other individual looked up at the complainant and walked away, crossing the street. As the complainant approached his car, he realized that it had been broken into.

At this point, the complainant ran across the street, pulled out his firearm and yelled, "police, don't move." The defendant stopped, but the other individual continued to walk toward the corner. The complainant directed the defendant to get down on the ground, and the defendant complied, dropping the white plastic bags on the ground. Meanwhile, the other individual turned around and said to the defendant "he ain't no cop," and encouraged the defendant to fight the complainant. A scuffle then ensued between the defendant and the complainant. When the defendant was able to free himself from the scuffle, he picked up the white plastic bags and walked away with the other individual.

Shortly thereafter, a police vehicle arrived and picked up the complainant, and after driving for approximately one block, the complainant identified the defendant and the other individual as the "guys that had broken into [his] car." The defendant, at that time, was still carrying the plastic bags. The complainant ultimately identified his car radio in one of the bags.

Considering the totality of the circumstances, at the moment that the complainant realized that his car had been broken into, he was authorized, at best, to exercise his common-law right of inquiry (see People v De Bour, 40 NY2d 210, 213 [1976]; People v Moore, 176 AD2d 297, 298 [1991]). The defendant's behavior prior to the initial stop and detention was of a totally innocuous nature. The defendant's conduct of standing next to the complainant's car at approximately 2:30 a.m. while carrying two white plastic bags could readily be interpreted as innocent as well as guilty behavior (see People v Moore, 176 AD2d at 298). The same holds true for the defendant's act of crossing the street after seeing the complainant (see People v Carmichael, 92 AD3d 687, 688 [2012]). The complainant's observations of the defendant did not constitute specific circumstances indicative of criminal activity so as to establish the reasonable suspicion that was necessary to forcibly stop and detain the defendant (see id. at 688). Since the complainant had, at most, a founded suspicion that criminal activity had taken place, he was

authorized to exercise his common-law right of inquiry, but he was not authorized to forcibly stop and detain the defendant at gunpoint (*see People v Quinones*, 45 AD3d 874 [2007], *affd* 12 NY3d 116 [2009]; *People v Moore*, 176 AD2d at 298). Accordingly, in my view, the initial stop and detention of the defendant was unlawful.

However, the causal nexus between the unlawful stop and detention and the challenged evidence (i.e., the physical evidence recovered and the identification of the defendant) was so attenuated that the taint of the initial unlawful stop and detention had been removed (*see People v Rogers*, 52 NY2d 527, 532-533 [1981], *cert denied* 454 US 898 [1981]; *People v Breazil*, 52 AD3d 523, 524 [2008]; *People v White*, 232 AD2d 437 [1996]). After the unlawful stop and detention of the defendant, the defendant initiated a scuffle between himself and the complainant, and after that scuffle, the defendant walked away while retaining the two plastic bags. These intervening events were sufficient to purge the taint of the unlawful stop and detention. Stated differently, by virtue of these intervening events, it can no longer be said that the challenged evidence was the direct product of the unlawful stop and detention (*see generally Wong Sun v United States*, 371 US 471 [1963]). Under these circumstances, where there is an insufficient nexus between the unlawful police conduct and the challenged evidence, it would be inappropriate to invoke the exclusionary rule (*see People v Rogers*, 52 NY2d at 534-535).

I agree with the majority's determination that the arrest of the defendant was supported by probable cause in light of the violent physical altercation between the defendant and the complainant, and with the majority's determinations with respect to the legal sufficiency and weight of the evidence.